# WINSLOW *v.* AUSTIN.

PATENTS; INTERFERENCE; EVIDENCE.

1. Where in an interference between W's application for a reissue of a patent and A's original application, W, the applicant for reissue, was assigned the position of senior applicant by reason of the date of the filing of the application upon which his patent was issued, and A, the junior applicant, claimed that he disclosed the invention to W before the latter filed his application and introduced evidence corroborating his claim, while W relied upon his record date and took no testimony, it was *held* that the failure of W to rebut the assertion of A furnished strong evidence against W, and that A was the prior inventor.

2. While, in such a case, the fact that A took an assignment of an interest in W's patent from certain assignees of W would be evidence against A in the interference proceeding, it could not be taken as an admission on the part of A that he in reality had no claim to the invention and that W was the real inventor.

No. 102. Patent Appeals. Submitted November 21, 1898. Decided January 10, 1899.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. W. S. Duvall* for the appellant.

*Mr. Hervey S. Knight* for the appellee.

Mr. Chief Justice Alvey delivered the opinion of the Court:

This appeal is from the judgment of the Commissioner of Patents in matter of interference between the application of Stephen J. Austin, filed January 12, 1895, and the application of Marlon H. Winslow for reissue of Patent No. 524,271, granted August 7, 1894, on application filed June 1, 1893, the application for the reissue of patents by Winslow having been filed June 24, 1895. The applications were for patents for improvements in platform-scales. The issue made is as follows:

"In a platform-scale the combination of twist-shafts, a rear lever, a multiplying-lever, a short lever, carried by one of said twist-shafts and connected to said multiplying-lever, one or more eveners, and short levers, a cross-beam and connections between the several levers."

The interference, as already stated, is between an application for a reissue of a patent to Winslow, who is senior party, and an original application by Austin, the junior party, filed after the grant of the patent, but before the filing of the application for the reissue. Winslow, it appears, has been assigned the position of senior party on the record by reason of the date of the filing of the application on which his original patent was granted. He has filed no preliminary statement and has offered no proof, but he stands and relies upon his record or filing dates exclusively and alone to repel the application of his adversary Austin on the question of priority of invention. Austin, the adverse claimant, has taken testimony in support of his claim to priority, and to overcome the *prima facie* case made by the record in favor of Winslow.

Some of the questions raised and discussed in the Patent Office we deem it unnecessary to discuss here. For instance, it was contended there, as it has been contended here, and

with considerable force and plausibility, that Winslow ought not to be given the standing in the trial of this issue of a patentee, because no patent has ever issued to him for the particular issue here in controversy, and reliance for this position is placed upon the terms, the scope, and meaning of the claim for which the original patent issued, as compared with the specifications and claims as first filed on original application. If the patent did not in fact and by fair legal construction contain the claim to the invention of the present issue, it is clear it can not be relied upon to establish a constructive reduction to practice of the invention of this issue. But in view of all the facts of the case we think it unnecessary to go into that question. As the case was made up and presented in the Patent Office, and the parties assigned their relative positions to the issue, it would seem to be clear that Winslow has a *prima facie* case upon the record, and it is incumbent upon Austin to overcome and displace that *prima facie* case by competent proof to establish priority of invention of the issue and reduction to practice. And in considering this question we shall take as the filing or record date of Winslow to be the 1st of June, 1893, the date of the application for the original patent.

But before referring to other facts of the case, it may be proper to state, that in July, 1894, before the original patent was issued to Winslow, he assigned to Licht and Keeney, two of the witnesses examined on the part of Austin, each an undivided one-third of his (Winslow's) right, title and interest in the invention covered by the subsequently-issued original patent. These assignees, thus holding two-thirds undivided interest in the patent-right, assented to the subsequent application for reissue; but afterward, and on the same day that the reissue application was executed, these two parties transferred their interest by assignment to Austin, who had previously filed an application in his own name, claiming the same subject-matter. Austin, however, entered a strong protest against the enter-

taining of the application for reissue by the Office, claiming that he, as assignee, had not given his assent to such application.　But his objection was overruled, upon the ground that Licht and Keeney had given their assent to the application before the assignment made to Austin.　This act of Austin in taking the assignment of the two-thirds interest in the invention is strongly urged by Winslow as evidence to conclude or estop Austin from asserting claim and priority of invention as against Winslow.　This will be noticed hereafter.

Both Austin and Winslow, about the time of the invention, resided in the same town, and Winslow was during a part of the time in the employ of Austin, who carried on the business of manufacturing scales.　According to the testimony of Austin, he first conceived the invention of the present issue some time in May, 1890; that he made his "Exhibit Drawing A" in December, 1890, and that this exhibit contains the invention of this issue.　He also, according to his testimony, made another drawing, "Exhibit B," in January, 1893, in which the short lever is shown, and another drawing was made by him on July 4, 1892, marked "Exhibit C." This last-mentioned exhibit, he says, "represents all but the rear lever, which seems to have been left off.　The purpose was to extend this; the rear lever could be put on.　I have marked the parts with blue pencil, with letters corresponding to 'Exhibit A.'"

He says "that he has never made any working model, but he put up a completed scale in the winter of 1893.　A portion of the patterns were made in the winter of 1892–1893, this short lever D being one of them.　They were concluded the next fall, of 1893."

In answer to the question whether he had ever built any scales in accordance with this claim he replied: "I completed a scale the same winter (that is, of 1893), and sold it to the Valley Steel Company, Belleville, Ill., in March."

Then he is asked whether he had explained the invention

to anyone, which is the subject matter of this interference, and his reply was: "I explained it particularly in the winter of 1892 and 1893 to M. H. Winslow and George Licht, and I think I explained it to James J. Keeney, by drawing on the sand floor of the shop and by sketches on dressed pieces of lumber in the shop. I explained the invention to Winslow fully in the winter of 1892 and 1893 from the drawings here shown. Winslow was in my employ at that time. He never denied to me but what the invention was mine; but he told me that he thought I had discarded it; it was not good enough for me, but he thought it was good enough for him, and he would patent it. These were just about the words he used. I think that was in February, 1893."

All this was prior to the date of the filing of the original application by Winslow.

It is very true, as declared by this court in the case of *Mergenthaler* v. *Scudder*, 11 App. D. C. 264, the fact of conception by an inventor, for the purpose of establishing priority, can not be proved by his mere allegation nor by his unsupported testimony, where there has been no disclosure to others or embodiment of the invention in some clearly perceptible form, such as drawings or models, with sufficient proof of identity in point of time. For if such unsupported proof of the inventor himself could be received *as sufficient evidence* of conception, in many cases there would be no way of effectually rebutting or disproving such evidence. But it does not follow from this principle that the party upon whom is cast the *onus* of proving the fact of priority of invention is an incompetent witness to testify as to the fact of priority. The competency or admissibility of the evidence is one thing, but the sufficiency of it to establish a fact is quite a different thing. A party may testify, but his testimony may not be taken without corroboration as sufficient to establish a particular fact. In this case, however, the testimony of Austin is strongly corroborated in very material particulars by other and independent testimony.

Licht, the assignee of Winslow and assignor of Austin of an interest in the Winslow patent, and who was associated with Winslow in an effort to invent a scale, and himself a skillful mechanic and constructionist of the thing invented, says that he is thoroughly familiar with the invention in issue, and that it does embrace the invention of Austin, as illustrated by his exhibits; that the construction illustrated by Austin's "Exhibit A" is the same construction that is indicated by the claim in issue; that Austin explained the invention to him, but the time being long since he can not recollect the date. He says: "I saw his (Austin's) drawings and knew he was getting up a scale like this, before the other scale (Winslow's) went into the Patent Office;" that this was prior to June 1, 1893. "I am certain of it, because I had a little hand in it myself; I was connected with it at that time."

He was at that time associated with Winslow in business, and he says he never heard Winslow claim that the invention in controversy was made by him prior to the explanation of it made by Austin to witness. "We knew," says the witness, "the construction of Austin's coupling shown by 'Exhibit B.' We knew Austin was going to get up a scale, and we were trying to get ours in too. Where his was coupled in the middle, ours was coupled outside."

He says when he speaks of "we" he means Winslow, Keeney, and himself; that he knew of the construction of Austin's scale, and that it was prior to March 17, 1893, and consequently prior to the date of Winslow's application for his patent.

Keeney was also examined as a witness for Austin, and while he was not very definite as to precise dates, yet he testifies substantially to several of the facts that had been testified to by Licht. He is also a skilled mechanic, and possessed full knowledge of all the details of the invention in issue.

Whatever may be thought or said of Austin, and his wit-

nesses Licht and Keeney, Winslow certainly knew all about them, and with that knowledge he thought proper to forbear the exercise of his right to cross-examine them, or to attempt in any manner to impeach them. A mere charge in an attorney's brief that evidence has been fabricated, and that witnesses have been coached for the particular purposes of the case, will not justify the court in acting upon such imputations unless supported by very clear and convincing proof. But instead of a full disclosure of the facts attending the conception of the invention, with dates and other circumstances to limit and direct in an investigation of the question of priority, Winslow has filed no preliminary statement, and has failed to become a witness in his own behalf to controvert and rebut the testimony given on behalf of his adversary, if that testimony was in any essential particular untrue or needed explanation. Instead of a resort to proof of the facts as they really existed, Winslow has elected to rest upon a technicality, or the *prima facie* effect of a status acquired in the Office by virtue of seniority of application for his original patent. This may serve in some cases, but it is not always safe to rest exclusively upon it. A party, by his conduct in doing acts or in omitting to act when circumstances would seem to require action, may often furnish evidence more convincing in leading to a conclusion than even the sworn testimony of the party; and that would seem to be the case here.

On this state of the case, the Board of Examiners-in-Chief, on appeal to them, and the Commissioner of Patents, on appeal to him, appear to have had no difficulty in reaching the conclusion that Austin had fully made out his claim to priority of invention, and he was accordingly awarded such priority. The conclusion of the examiner of interferences was in favor of Winslow, but his conclusion was largely based upon the *prima facie* effect secured to Winslow by his position of senior party upon the record, and upon the fact of the assignment taken by Austin from

Licht and Keeney of interest in the Winslow patent. And there is unquestionably considerable force in this latter fact. But this fact, we think, ought not to be taken as an admission on the part of Austin that he in reality and truth had no claim to the invention involved in the present issue, and that the sole and exclusive right as inventor was in Winslow. As very properly said by the Examiners-in-Chief, he may have obtained the assignment as an easy way to quiet a contest, or in order to combine in himself all adverse claims to the contested invention. He did immediately upon receiving the assignment enter a vigorous protest against the application for reissue of the patent,—a fact not altogether consistent with the supposed concession that the exclusive right to the invention was embraced by the patent under which he held two-thirds interest, as the patent had been surrendered as being worthless without the reissue.

It is urged on behalf of Winslow that there has been undue and improper delay on the part of Austin in coming to the Patent Office with his claim, and that it ought not to be upheld and allowed to overcome the *prima facie* right acquired by Winslow by virtue of his original application of the 1st of June, 1893. But there does not appear to have been any unreasonable delay on the part of Austin in making his application. The machine was a complicated one, composed of many parts, and required nice and exact adjustment, and to perfect this required time. There is no evidence of the want of reasonable diligence in perfecting the invention. The great difficulty on the part of Winslow was that he appears to have come to the Patent Office without sufficient careful preparation. His claims, as originally presented, appear to have been rather of a tentative character than otherwise. They were, if we may judge from the nature and character of the proceedings in the Patent Office to which they gave rise, immature and very imperfectly defined. Hence, the repeated changes and amendments and final reduction to a single claim. And, after all, it was

found necessary to surrender the patent and apply for a re-issue thereof upon amended specifications and a more perfectly-defined claim. And that original application and proceedings thereon are what are set up and relied upon as establishing the fact of reduction to practice of the invention of the present issue as against the subsequently-filed application of Austin. This presents a question, however, that we have not thought proper to decide.

We are clearly of opinion that the ruling and award of the Commissioner of Patents should be affirmed and the proceedings and opinion of this court be certified to the Commissioner of Patents to be entered of record, as directed by law.                    *Rulings affirmed.*