## DE WALLACE *v.* SCOTT.

PATENTS; REDUCTION TO PRACTICE; DILIGENCE.

1. Diligence in reducing an invention to practice is not required to relate back to the date of conception, but it is sufficient if the party who has conceived the invention was exercising diligence at the time of his rival's conception and continued therein until reduction to practice.
2. What is or is not diligence in a given case must depend upon the special facts and circumstances. Some indulgence is generally extended to an inventor who is engaged in a *bona fide* attempt to perfect his invention.

Patent Appeals. No. 126. Submitted May 10, 1899. Decided June 6, 1899.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Reversed.*

The facts are sufficiently stated in the opinion.

*Messrs. Paul & Hawley* and *Mr. W. G. Henderson* for the appellant.

*Mr. George H. Howard* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding having the following issue:

" In a train-alarm, the combination, with a signal to operate automatically at a given instant, the air-brake valve and means for operating the same automatically after the lapse of the given time from the operation of said signal, substantially as described."

The testimony upon which this issue was submitted was, by agreement between the parties, taken for use in another interference that had been declared between the same parties, in which priority of invention of the separate mechanism of the train-alarm was involved. The issue in that case was this:

" The combination with a locomotive-engine and the running-gear thereof, of a mechanical signal, its actuating mechanism and the automatic means governed by the travel of the engine for releasing the signal-operating mechanism at any predetermined point on the road."

That case was finally determined December 5, 1898. Priority was awarded to De Wallace, and there having been no appeal by his opponents, patent has issued to him in accordance with that decision. The two interferences were made necessary by the manner in which De Wallace made applications for patents. De Wallace was the first to enter the Office. On October 19, 1896, he made an application for a patent for the invention of the train-alarm device embodied in the issue last set out. The mechanism for the automatic operation of the air-brake valve, in combination with the train-alarm, was not mentioned. The latter was separately applied for on May 28, 1897.

Scott and Jungbauer, as joint inventors, filed one application embodying both issues on March 20, 1897. In their preliminary statement they claimed conception about September 12, 1895; the commencement of a model about October 1, 1895, and its completion during the summer of 1896 ; disclosure to others about October 1, 1895; the use of said model about December 8, 1896, experimentally; and the actual reduction to practice by successful use on a locomotive January 16, 1897. De Wallace claimed conception in November, 1893; disclosure to others and making of sketches about the same time ; the making of sketches and their exhibition to others in January, 1894, and the completion of a working machine in April and May, 1897.

In both cases the examiner of interferences decided in favor of Scott and Jungbauer. In both he was reversed by the examiners in chief, who awarded priority to De Wallace. They found in respect of the now finally settled issue that the invention claimed by Scott and Jungbauer was not made until December 8, 1896.

In affirming that decision the Commissioner said: "Scott and Jungbauer claim a conception of the invention in October, 1895; the making of a complete device in July, 1896; the operation of this device on December 8, 1896; and the test of it on a locomotive in January, 1897. So far as the completion of the device in July, 1896, is concerned, the only evidence to support this contention is the testimony of Jungbauer himself and that part of Myers' testimony which is to the effect that in July, 1896, Jungbauer showed him what he (Myers) understood to be the completed device. He did not see this device operate, nor can he tell very much about its construction or how it would operate. This testimony is too meager to support a claim of priority at that time, especially when it is considered that Scott and Jungbauer are the junior parties and the burden of proof is upon them. The next claim for completion is in December, 1896, but prior to this time De Wallace had constructively reduced the invention to practice by filing an application on October 19, 1896. The testimony on behalf of De Wallace convinces me that he had a conception of and had disclosed the device covered by the issue prior to the earliest claim for conception of Scott and Jungbauer.

In coming to a decision in favor of De Wallace in the present case, the examiners in chief were of the opinion that De Wallace conceived the invention of the issue as an attachment to his train-alarm mechanism as early as 1894, and that he was exercising diligence in construction and reduction to practice when Scott and Jungbauer proved entry into the field. This decision was reversed by the Commissioner solely on the ground of the want of diligence by

De Wallace. There is no denial of an earlier conception by De Wallace. Upon a motion for rehearing he adhered to this decision. The final conclusion is, that De Wallace was culpably negligent in not including this mechanism in his first application, or making a separate application therefor. He then says that the tests made by Scott and Jungbauer, on December 8, 1896, were a reduction to practice by them.; but assuming that it only amounted to proof of conception on that date, he was of the opinion that De Wallace was still in default, because, although he gave an order for the construction of a machine on December 1, 1896, he did not follow it up with sufficient diligence.

We have devoted some space to the proceedings in respect of the claim made by the parties to what may be called the main invention—the train alarm device—because they bear an important relation to the issue that remains to be settled. The decisions of the several Patent Office tribunals in both cases are founded on the same testimony as regards the conception of the inventions, disclosures, constructions, and actual reductions to practice. The final decision in favor of De Wallace in the first case has been acquiesced in by Scott and Jungbauer, and he is in the possession of its fruits. On the points aforesaid, the combination of the invention jointly claimed by Scott and Jungbauer is indivisible. They conceived, worked at, and completed the invention of both the issues at the same time.

In view of the conclusions of fact carefully stated in the opinion of the examiners in chief, in which we concur, and the implied assent of the Commissioner thereto in the main, we deem it neither necessary nor important to consume time with a special review of the evidence on these points.

From all the testimony in the case our conclusions are:

1. De Wallace had an idea of the invention as early as the beginning of 1894. Whether this idea had attained a definite and permanent form and had been brought to the point of complete conception in the sense of the law before

December 1, 1896, is not material. On that date, at the latest, the conception had become complete. It had then assumed such shape that it could be put in working form by a skilled mechanic. *Mergenthaler* v. *Scudder*, 11 App. D. C. 264, 276.

2. Scott and Jungbauer did not in the legal sense conceive the invention at any of the earlier dates claimed by them. It is questionable whether Scott can be called an inventor at all. He was the superintendent of a great railway system on and prior to October 1, 1895, and had formerly been a locomotive engineer. In common with other practical engineers, his attention had been called by several disastrous railway collisions to the importance of obtaining some certain mechanical guard against the forgetfulness and negligence of locomotive engineers. He had an idea that some kind of alarm mechanism might be made and operated in connection with the "travel" of the engine. He believed it possible to construct some device that would produce the desired result; but he had no definite conception of the means by which that result could be produced. He was at the beginning of invention merely. He had not invented. *Mergenthaler* v. *Scudder*, 11 App. D. C. 264, 276; *Hunter* v. *Stikeman*, 13 App. D. C. 214: 85 O. G. 610.

Jungbauer was a skilled clockmaker, and had recently invented an alarm clock. Scott called him in, explained his object, and requested him to go to work immediately to make a device that would accomplish the desired result. Furnished with the general idea merely, Jungbauer was expected to devise the practical means of putting it into some working form. The process of inventing begun by Scott was thenceforward carried on by Jungbauer. Hence his claim and its recognition by Scott of joint invention. Jungbauer went to work with all the resources of Scott, including the railway shops and mechanics, at his command. His first claim of a result in the construction of an experimental device in July, 1896, is not sufficiently supported.

As said by the Commissioner in the opinion hereinabove quoted:

"So far as the completion of the device in July, 1896, is concerned, the only evidence to support this contention is the testimony of Jungbauer himself, and that part of Myers' testimony which is to the effect that in July, 1896, Jungbauer showed him what he (Myers) understood to be the completed device. He did not see this device operate, nor can he tell very much about its construction, nor how it would operate."

Myers was the partner of Jungbauer in the business of clockmaker and jeweler, but had no part in this invention. Scott had interested with him in the enterprise C. B. Davison and G. L. Warren. The first was chief of the railway telegraph service, and had recommended Jungbauer to Scott. He took a deep interest in the plan, and kept a daily record of events connected with it. Warren was the mechanical engineer of the railway, and made the final drawings for presentation with the application for the patent when filed March 20, 1897. Neither Scott, nor Davison, nor Warren saw this alleged construction until December 8, 1896. No sketches or drawings by which the device was made were preserved.

The testimony is insufficient to establish the fact of complete conception at that date for the reasons given in *Mergenthaler* v. *Scudder*, 11 App. D. C. 264, 278.

3. There is no other evidence to show matured conception of the invention until December 8, 1896, when Jungbauer exhibited to the parties aforesaid a model device in two sections. The alarm mechanism was worked by means of a belt applied to the wheel of a sewing-machine treadle. It was also explained or demonstrated how the attachment for operating upon the valve of the air-brake pipe would work in co-operation with the alarm mechanism. This was not a reduction to practice of a combination of this character and intended use. *Hunter* v. *Stikeman*, 13 App. D. C. 214: 85 O. G. 610, 612; *Warner* v. *Smith*, 13 App. D. C. 111: 84

O. G. 311; *Mason* v. *Hepburn,* 13 App. D. C. 86: 84 O. G. 147, 149; *Ruete* v. *Elwell, ante,* 20.

No sketches showing this first construction were preserved. The device was dismantled after trial upon a locomotive about January 17, 1897, and a few of its parts only were used in the completed device described in the application for the patent. The earliest date of conception shown by Scott and Jungbauer is therefore December 8, 1896.

4. Having passed by as immaterial the claim of conception by De Wallace as early as 1893 or 1894, it is unnecessary to consider the question of his exercise of proper diligence in the matter of reduction to practice before December 1, 1896. This diligence is not required to relate back to the date of conception. It is sufficient if he was exercising diligence at the time of his rival's conception and continued therein until reduction to practice. *Yates* v. *Huson,* 8 App. D. C. 93, 102. De Wallace unquestionably had a complete conception of the invention on December 1, 1896, when he employed a skilled mechanic to embody his combination in a working device. This was the beginning of diligence seven days before the date of conception awarded to Scott and Jungbauer. When they entered the field, he was actively engaged in the effort to reduce his inventions to actual practice. He was poor, in feeble health, and had a family to support by his constant daily labor as official stenographer of the municipal court of St. Paul. Having no opportunity to visit the mechanic's shop in the neighboring city of Minneapolis during the hours of court, he made frequent visits during afternoons and at night. He furnished the necessary sketches and by his frequent explanations aided in the work of construction.

The combination device was not a simple one. It contained a great number of small pieces requiring nice adjustment and could not be completed rapidly. The mechanic was engaged in some other work that he was compelled to carry on at the same time. No doubt but that by exclusive

and constant work upon the machine he could have finished it in a much shorter time than was consumed. To make this the test is not reasonable in this case. No hard and fast rule can be laid down. What is or is not diligence in a given case must depend upon its special facts and circumstances. Some indulgence is generally extended to an inventor who is engaged in a *bona fide* attempt to perfect his invention. *McCormick* v. *Cleal,* 12 App. D. C. 335, 342.

Under all the circumstances disclosed by the evidence we are of the opinion that De Wallace was not wanting in diligence after the date aforesaid.

It follows from these conclusions that the decision appealed from must be reversed, and priority of invention adjudged to De Wallace.

This decision will be certified to the Commissioner of Patents, as required by law. It is so ordered.

*Reversed.*