# PETRIE *v.* DE SCHWEINITZ.

PATENTS; INTERFERENCE; EVIDENCE; DILIGENCE.

1. Evidence in an interference proceeding of self-serving declarations concerning the invention, while admissible as disclosures tending to establish the fact of conception, are incompetent to prove the independent fact of reduction to practice.

2. The unsupported testimony of a party to an interference will not be accepted or acted upon as sufficient proof of the conception of an invention, the reasons for which apply with equal force to its reduction to practice; *following* Mergenthaler v. Scudder, 11 App. D. C. 264; Winslow v. Austin, 14 id. 137; De Wallace v. Scott, 15 id. 157; Tyler v. St. Amand, 17 id. 464.

3. Where thirteen years elapsed between the alleged conception by one of the parties to an interference and the date of his application, which was filed two years after his rival's, an explanation is insufficient which is to the effect that for the first seven years he was searching for proper material and thereafter he was financially unable to apply for a patent, where it appears that his difficulty was not in obtaining proper material, but in obtaining it easily, and that, although poor, he failed to try to interest others in the invention to assist him in securing a patent or in making practical use of the invention, but on the contrary kept it from the public.

No. 186.  Patent Appeals.  Submitted January 16, 1902.  Decided March 5, 1902.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.       *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Cyrus W. Rice, Mr. C. K. Chamberlain* and *Mr. Hervey S. Knight* for the appellant.

*Mr. John C. Pennie* and *Mr. John A. Goldsborough* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an interference proceeding relating to an improved process for treating tobacco. The issue was declared in the following terms:

" 1. The process of treating tobacco of inferior quality, consisting, first, in sterilizing the same, under such conditions and sufficiently long continued as to destroy the original bacteria and spores existing thereon, then adding to the sterilized tobacco bacteria or cultures thereof to produce a new and characteristic flavor, and then subjecting the tobacco to fermentation, substantially as and for the purpose described.

" 2. The process of changing the flavor of tobacco, which consists in first freeing the tobacco of the species of bacteria originally existing thereon, and then adding in place thereof bacteria or cultures thereof, to produce a new and characteristic flavor, and also a material suitable for bacterial food, substantially as described."

The appellee, Emil A. De Schweinitz, took no proof, but relied solely upon his application filed in the Patent Office February 4, 1897.

The appellant, James P. Petrie, filed his application August 10, 1899, and introduced evidence under the burden of proof imposed to show conception prior to the record-date of his opponent and actual reduction to practice prior thereto, or else due diligence therein.

The examiner of interferences awarded priority to Petrie, but his decision was reversed by the examiners-in-chief. Their decision was on appeal to the Commissioner affirmed by him, and further appeal has been prosecuted therefrom.

Petrie's preliminary statement alleged discovery of the invention of count 1 in the summer of 1886, and of that of count 2 not later than June, 1893. He further alleged that he reduced both inventions to actual practice not later than June 15, 1893, and continued his experiments up to the summer of 1899, for the purpose of ascertaining the best method commercially of practicing the process, and produced im-

proved tobacco several times by way of demonstrating the practicability of his process. This was amended subsequently and made to show disclosure to others not later than June 1, 1888, and the production of improved tobacco under both counts prior to June 15, 1893.

The examiners-in-chief and Commissioner conceded the early conception of Petrie, but held the evidence insufficient to show either reduction to practice or the exercise of the necessary diligence to that end, before the constructive reduction of his opponent through the application filed.

The process described by Petrie as practiced by him is an elaborate one. He does not claim that even a member of his household saw him conduct one of his numerous experiments. Several witnesses testified that he told them what he had done or was doing in the way of practicing and perfecting his process for improving tobacco, but none saw the process worked. All of his experimentation was secret. This is expressly admitted in his affidavit filed to obtain the amendment of the preliminary statement, in which he says:

" During the time that I have been engaged in experimenting and working out my said invention, I have been strongly of the opinion that an inventor, at least until the time of making application for a patent, should not divulge the theory or practice of his invention, but should keep the same within his own knowledge."

Upon the consideration of this evidence, the Commissioner concluded as follows:

" The testimony of the witnesses as to what Petrie told them he was doing or intended to do may be taken as showing that he had a conception of the invention at that time, but it cannot be accepted as showing a reduction to practice. Petrie himself is the only one who testifies to an actual performance of the process of the issue. None of the others saw it, and all that they know of it was derived from Petrie's statements. The testimony of these witnesses does not corroborate Petrie's present statement that he successfully performed the process, and his unsupported statement to that effect is insufficient to establish the fact. From the nature of the in-

vention, the result of his experiments performed in secret could not be preserved to show what was done and whether or not it amounted to a reduction to practice of the invention, and his present statement of his conclusion that his experiments were successful and constituted a reduction to practice of the invention is not capable of being rebutted any more than would be the statement of an inventor as to his conception. Considering the natural bias of a party and the incentive to color the testimony in his own interest, it has been repeatedly held that the unsupported testimony of the inventor is insufficient to establish facts of this kind."

In this we fully concur. The evidence of self-serving declarations concerning an invention, whilst admissible as disclosures tending to establish the fact of conception, are clearly incompetent to prove the independent fact of reduction of that conception to practice.

That the unsupported evidence of a party will not be accepted or acted upon as sufficient proof of the conception of an invention, is a well-settled principle, the reasons for which apply with equal force to its reduction to practice. *Mergenthaler* v. *Scudder,* 11 App. D. C. 264, 278; *Winslow* v. *Austin,* 14 Idem, 137, 141; *De Wallace* v. *Scott,* 15 Idem, 157, 162; *Tyler* v. *St. Amand,* 17 Idem, 464, 467; *Young* v. *Donnelly,* C. D. 1898, p. 20.

The remaining question is whether Petrie, having conceived the invention, was exercising diligence in respect of it at the date of De Schweinitz's application.

Without restating the evidence that has been reviewed in the decisions of the Patent Office tribunals, we are content to adopt, as the expression of our opinion on this point, the following extract from the Commissioner's decision:

" There is a delay of thirteen years after his alleged conception to be explained. He alleges that for the first seven years, or until 1893, he was searching for the proper ' bacterial food,' and after that date he was financially unable to apply for a patent. Considering all of the circumstances, these excuses are clearly insufficient. The first rests upon his own statement, and that statement is not consistent with other

testimony given by him or with his conduct. He says himself that his invention was complete in 1888, and that the only difficulty was that he was not able to obtain the bacterial food *at all times,* thus indicating that the trouble, if any, was in his ability to obtain the food easily and not in its character. This view is strengthened by an inspection of the issue and the other claims of Petrie's application, none of which are limited to the particular "bacterial food" obtained from sprouted barley, which is now claimed to be so important. They are broad, and apply to what Petrie claims to have had in 1886. Petrie's own testimony shows that he had ample means to make practical use of the invention or file an application at any time up to 1893.

"Even if the time after his discovery of sprouted barley in 1893 is alone considered Petrie did not exercise reasonable diligence. It is true that he seems to have been poor, but there is no showing whatever that he tried to interest others in the invention to assist him in securing a patent or in making practical use of the invention, but, on the contrary, he seems to have intentionally kept it from the public. Mere poverty cannot excuse an absence of all effort for such a length of time. According to his own showing all that Petrie did between 1893 and 1899 was to make a few experiments in private upon the same lines as his previous experiments, without accomplishing or expecting to accomplish anything further than he had previously accomplished."

This conclusion is amply supported by former decisions of this court where analogous conditions were shown. *Griffin* v. *Swenson,* 15 App. D. C. 135, 138; *Platt* v. *Shipley,* 11 Idem, 576, 583; *Dodge* v. *Fowler,* 11 Idem, 592, 598; *Marvel* v. *Decker,* 13 Idem, 562, 564.

It follows that the decision of the Commissioner must be affirmed. It is so ordered and that this decision be certified to the Commissioner of Patents as the statute requires.

*Affirmed.*