## ROBINSON *v.* THRESHER.

---

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE.

1. If an experimental machine completely embodies the invention, and is capable of testing its efficiency to the full extent of its power, the mere fact that later manufactures to fill orders may be on a larger scale cannot impair its effect as constituting reduction to practice.

2. While the dismantling of an experimental machine after its trial does not necessarily prevent its construction and operation from having the effect of a reduction to practice, yet such a proceeding is sometimes an important and cogent circumstance in the determination of the fact whether the trial showed a successful reduction to practice, or amounted to nothing more than abandoned experiment. (Following *Funk* v. *Whitely,* 25 App. D. C. 313, 315.)

3. The dismantling of an experimental machine by a large and prosperous company has more weight as showing the lack of success of the trial than it would have if done by a poor inventor whose necessities compel him to utilize the parts for other purposes.

4. In a case where the units of a machine are proved to be old and practical, severally considered, and where the only novelty is the relative mechanical construction of the head of the casing of one machine and

the usual parts of the other machine whereby the one shall be put inside of the other, it would be obvious from the mechanical construction shown in a drawing that each unit would, in that new arrangement, practically perform its usual functions; but, where a test of an experimental machine has been carefully made by a large manufacturing company, the failure to call as a witness the engineer who had charge of such test has great weight as tending to show that the test was unsuccessful.

No. 357.   Patent Appeals.   Submitted May 11, 1906.   Decided June 5, 1906.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.               *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Albert G. Davis, Mr. Charles Neave,* and *Mr. Arthur A. Buck* for the appellant.

*Mr. Melville Church* and *Mr. Joseph B. Church* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference declared between an application for patent for an improvement in electric motors and brakes, filed by Edward W. Robinson April 22, 1904, and a patent issued to Alfred A. Thresher August 18, 1903, on an application filed June 17, 1903.

The issue is in eight counts, as follows:

"1. The combination with an electric motor, its shaft and inclosing casing embodying heads having bearings for the shaft, of a brake wheel on the shaft between the heads, a surface with which said wheel co-operates, a spring for effecting engagement between the wheel and its co-operating surface, and an electromagnet for holding the same out of such engagement against the tension of the spring.

"2. The combination with an electric motor, its shaft and in-

closing casing embodying heads having bearings for the shaft, of a brake wheel longitudinally movable on the shaft between the heads, a fixed friction surface with which said wheel co-operates, a spring for moving the wheel longitudinally of the shaft and into contact with its co-operating fixed friction surface, and an electro-magnet for holding the wheel out of engagement with said co-operating surface.

"3. The combination with an electric motor, its shaft, armature, and inclosing casing embodying heads having bearings for the shaft, of a magnetically released friction brake for the shaft located between the armature and one of the heads of the casing.

"4. The combination with an electric motor, its shaft, armature, and inclosing casing embodying heads having bearings for the shaft, of a magnetically released friction brake for the shaft located between the armature and one of the heads of the casing, and an electro-magnet for releasing the brake located on the head and controlled from the motor-actuating circuit.

"5. The combination with an electric motor, its shaft, armature, and inclosing casing embodying heads having bearings for the shaft, of a friction brake wheel mounted to move longitudinally of the shaft and between the armature and head of the casing, a fixed friction surface with which the wheel co-operates, a clamping disc between the wheel and head, springs acting on the disc to move the wheel into engagement with its co-operating fixed friction surface, and an electro-magnet in the head for moving the disc against the tension of its springs to release the wheel.

"6. The combination with an electric motor, its shaft, armature, and casing embodying heads having bearings for the shaft, of a magnetically controlled friction brake for the shaft located between the armature and one of the heads, and an electro-magnet for controlling said brake having its coil recessed into the inner face of the head.

"7. The combination with an electric motor, its shaft, armature, and casing embodying heads having bearings for a shaft, of a magnetically controlled friction brake wheel on the shaft between the armature and one head, a relatively fixed ring on the inner side of said wheel, and means for securing the ring and

head together whereby the head and friction brake may be removed as a body.

"8. The combination with an electric motor, its shaft, armature, and casing embodying heads having bearings for the shaft, of a friction ring between the head and casing, a brake wheel movable longitudinally of the shaft between the head and ring, springs for moving the wheel into engagement with the ring, and electro-magnet for moving the wheel in the opposite direction, and means for securing the ring and head together."

As said by the Examiners-in-Chief, who reversed the decision of the Examiner of Interferences in favor of Thresher: "Generally stated, the invention of the issue is a machine comprising (1) an electric motor having an inclosing casing including heads having bearings for its shaft, and (2) a magnetically controlled brake inside of the casing of the motor, and between one of the heads of the casing and the armature of the motor."

The brake is applied by the tension of springs when unrestrained by the electro-magnet, which is energized by the current that operates the motor. When the current is on, the magnet counteracts this tension, thereby releasing the brake and holding it away from the armature of the motor. When it is cut off, the magnet ceases to restrain the pressure of the springs, which at once apply the brake and stop the revolution of the motor shaft.

The invention is a narrow one, for, as said by the Commissioner: "It appears from the record of this case that devices having these characteristics and functions were known and used before the invention in issue was conceived by either party. The invention is therefore restricted to certain novel details of construction set forth in the various counts of the issue, of which details the most important seems to be the location of the brake within the casing of the motor, or, as expressed in the issue, "upon the motor shaft and between the heads of the motor casing, in which heads said shaft is journaled."

All of the tribunals of the Patent Office, agreeing that Robinson labored under the burden always imposed upon one who seeks to overcome a patent held by his opponent, concurred in finding that he had conceived the invention in issue and dis-

closed it to others prior to the date of disclosure claimed by Thresher.    Thresher does not claim to have reduced the invention to practice until September 20, 1902.    Consequently the question of priority was made to turn upon the sufficiency of Robinson's evidence tending to show reduction to practice in June, 1902.    On this issue the tribunals failed to agree.    The Examiner of Interferences decided against Robinson.    His decision was reversed by the Examiners-in-Chief, who heard the appeal therefrom; and they, in turn, were reversed by the Commissioner, who awarded priority to Thresher.    ·From this final decision Robinson has appealed.

It appears that both inventors had specially in view supplying the demand of the United States for electric motors to be used for hoisting purposes upon war ships.    The object was a motor so designed that the brake would be released as soon as the current was turned on, and act automatically as soon as shut off. The special importance of locating the brake inside the motor casing is to lessen the danger of injury, and the liability to damage from moisture.

Robinson was an electrical designing engineer in the service of the General Electric Company of Schenectady, New York, which has the benefit of his invention.    Thresher is engaged in the manufacture of machinery at Dayton, Ohio, under the firm name of the Thresher Electric Company.    Both are bidders for government orders.    It appears that Robinson filed an application on April 3, 1903, for a patent for a brake device similar to that in issue, but no reference was made therein to an electric motor, nor was one shown either in drawings or specifications. After the issue of Thresher's patent, Robinson appears to have made several of the claims therein by amendment on September 12, 1903.    An interference was declared therein between him and Thresher on October 23, 1903.    This was dissolved by the Primary Examiner on March 14, 1904, on Thresher's motion. One of the grounds of this decision was that Robinson had no right to make the claims in issue as they were all limited to the combination with an electric motor.    Robinson took no appeal from this decision, but on April 22, 1904, filed his application

in the present case, making the claims in issue.    The matter has passed out of the case.

We come now to the consideration of the evidence in behalf of Robinson which is relied upon to show actual reduction of the invention to practice in June, 1902.    It is said in Robinson's brief that, prior to his conception of the invention, the General Electric Company had orders for several motors to be provided with electric brakes for operating ammunition hoists on naval vessels, and a compact form of machine was desired; and that smaller motors than had been used on other vessels were desired.    The contention is that, in designing the smaller motor, Robinson conceived this invention and embodied it in one.

It is shown that a motor was completed before June 13, 1902, and the claim is that it embodied this invention and was fully tested and found to operate in a satisfactory manner on June 13 and June 27, 1902.

It is conceded that this motor did not conform to the government requirements in respect of power; and was not intended to be used in filling an order.    It was an experimental machine, but not a mere model intended to illustrate the invention.    If it completely embodied the invention, and was capable of testing its efficiency to the full extent of its power, the mere fact that later manufactures to fill orders may have been on a larger scale cannot impair its effect as constituting reduction to practice.

Robinson's evidence shows that a number of changes were made in the materials and construction of this machine, as well as that parts of the original brake were removed and lost, or thrown away.

The machine was exhibited on the argument of the case in this court, and shows that some of the parts are missing.

Counsel for appellant say in their brief: "When the motor was introduced in evidence the armature originally in it had been changed for one with a longer shaft, the clamping ring (marked L on exhibit 6) and the friction cone disk (marked G) were missing; the fixed cone plate (marked H on the photographs) was not the one originally in the motor, and Robinson was unable to say whether the springs and the energizing coil of

the electro-magnet (marked L and J on exhibit 15) (a drawing) were those originally tested, although he said that these parts are similar in appearance and construction to those originally made up and tested. The upper and lower heads of the field magnet frame and both of the heads of the motor casing are, however, the same parts which were in this machine originally."

Counsel contends that while "the enumeration of the parts which have been changed, or which are missing, seems somewhat formidable," still enough remains to show conclusively that "the brake was originally within the motor casing between the armature and one of the heads of the casing." He rightly contends that the entire dismantling, even, of the machine would not necessarily prevent its construction and operation from having the effect of reduction to practice. *Funk* v. *Whitely,* 25 App. D. C. 313, 315; and cases there cited. At the same time, as said in those cases, it is sometimes an important and cogent circumstance in the determination of the fact whether the trial showed a successful reduction to practice, or amounted to nothing more than abandoned experiment.

We are satisfied from the evidence that the first test of the machine on June 13, 1902, did not show successful reduction to practice of the invention of the issue. The General Electric Company was accustomed to keep detailed records of trials of all machines, and those relating to this machine were introduced in evidence, and referred to by the engineer witnesses under whose supervision the work was done and the several tests made. Robinson, himself, said of the first test: The motor was first assembled without the friction cone armature disk, or energizing coil of the cone brake owing to the delay in getting castings, and preliminary heat run was made on the motor without the cone brake; also coneless tests."

One of the principal supervising engineers, Maxwell W. Day, testified concerning these tests then made, saying: "As I remember, the brake was not complete, but I do not know what particular parts were lacking." His letter book shows that, under date of June 17, he wrote requesting "the machine which was then in test without the brake to be assembled with the brake as soon as these tests were completed."

The second test that is claimed to have been complete in every respect took place on June 27, 1902. The evidence in regard to this test is far stronger, and we must confess that we are not without doubt as to the proper conclusion from it. Under the burden of proof, that doubt must be resolved in favor of the holder of the patent. Aside from this, the decision of the Commissioner ought to stand when there is doubt whether it is founded in error.

The witness Lamb, engineer of the commercial department under whose general supervision the last test was made, necessarily had to refer to the records of the test. Speaking from these, he identified his memorandum that the "machine ran O. K."

It appears from the sheet report that the entries therein purport to have been made by Mr. Fitzpatrick, who Lamb says did the testing under his supervision. Fitzpatrick who ought to be the most certain witness to what was actually done, upon whose report, when made and submitted, Lamb made his indorsement, was not called as a witness, nor was any attempt made to account for the failure to call him.

The Examiners-in-Chief, who held this evidence sufficient to establish the fact of a successful reduction to practice beyond a reasonable doubt, were apparently influenced in coming to the conclusion by their general view of the restricted character of the invention, its simplicity, and evident practicability, as appears in the following excerpt from their decision:

"The machine is of such a character and of such small variance from the prior machines that to an electrical engineer it would, at sight of drawings of it, be regarded as a machine which must be practical if properly constructed.

"An inclosed motor of small size with a magnetic cone brake placed outside of the casing of the motor was old. Both of the unitary machines of the combined machine needed for their making only mechanical skill. When the problem of putting the brake machine inside the casing of the motor machine was mechanically expressed in a drawing so exact as exhibit No. 6, there could be no doubt in the mind of an electrical engineer that

by ordinary skill the machine built according to that drawing would be successful in operation.

"The test of such a machine would be, not to determine whether it would operate, but rather to determine only whether it had the requisite power for the particular purpose for which it was to be used.  *  *  *

"In a case where the units of a machine are proved to be old and practical severally considered, and where the only novelty is the relative mechanical construction of the head of the casing of one machine and the usual parts of the other machine whereby the one shall be put inside of the other, it would be obvious from the mechanical construction shown in a drawing that each unit would in that new arrangement practically perform its usual functions. However that may be, the machine was by these tests proved to be practical."

The Commissioner took an opposite view of the requisite conditions, which is stated in his decision in the following language: "In a case of this kind it is not sufficient for the witnesses to state that a machine was tested and found successful. The opinions of witnesses that a machine contained the issue, and their conclusions from observation that its operation was successful, are entitled to some weight; but, wherever possible, the observed facts should be fully stated, so that the tribunal trying the case may judge the reasonableness of the opinions and conclusions stated. Clear, full, and specific statements regarding Robinson's alleged reduction to practice are not afforded by his record. Robinson and witnesses called by him have alleged generally the construction and successful operation of a machine, and some of the circumstances have been referred to, but the essential details regarding the alleged successful operation have been left largely to speculation."

The soundness of both doctrines, in a general sense, may be conceded; but the application of either in a particular case must be determined by its peculiar facts and circumstances. Having regard to all of the facts and circumstances of the present case, we are of the opinion that the doctrine of the Commissioner is the one of more reasonable application.

The evidence shows that the General Electric Company, in

whose shops the test was made, conducts its business of all kinds in a most careful and methodical manner. Its departments are under skilled and intelligent direction. Drawings are carefully made and blue prints taken and filed away for preservation in case of fire. Minute changes in drawings are carefully noted. When tests of machines are made elaborate description blanks are filled up by the engineer in personal charge of the same, and filed away.

In this case engineers, draftsmen, keepers of records and files were called to testify, and yet the engineer who personally made the test which is the crucial point of the case, and subsequently made the entries in the report, was neither called nor his absence accounted for. It was this report which the supervising engineer made his indorsement upon, and referred to as the basis of his evidence. As was said by the Commissioner, his indorsement that the machine operated successfully is not a satisfactory substitute for specific information as to the details of the test upon which his general conclusion was based. The fact that the same witness testified generally to some later tests, the date of which were not remembered as no records were kept, has a tendency to cast doubt upon the success of the trial relied on as a successful reduction of the particular invention to practice.

In this connection the dismantled state of the tested machine becomes a circumstance of some importance. There was no occasion to remove, or otherwise utilize, the missing parts, as is so often the case with poor inventors whose necessities compel them to detach parts of an old machine or model for use in the construction of a new machine or improvement. If these parts were removed for other uses of the experimental motor, which has been carefully preserved, no good reason appears why they were not also preserved for reattachment when occasion might demand.

Robinson's claim of reduction to practice failing, it is not contended that he was otherwise diligent in perfecting his invention so as to retain the advantage of his earlier conception.

For the reasons given, we must affirm the decision awarding

priority to Thresher. It is so ordered, and that this decision be certified to the Commissioner of Patents as required by law.

*Affirmed.*