29 C.C.P.A.(Patents)

## CRANE et al. v. CARLSON.

Patent Appeal No. 4569.

Court of Customs and Patent Appeals.

Feb. 24, 1942.

Rehearing Denied April 24, 1942.

710

F. Bascom Smith, of New York City (N. D. Parker, Jr., of Washington, D. C., of counsel), for appellants.

Herbert H. Thompson, of Brooklyn, N. Y., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Judge.

This is an interference proceeding instituted before the United States Patent Office wherein the Board of Appeals affirmed a decision of the Examiner of Interferences awarding priority of invention of the subject matter of all the counts, six in number, to appellee.

Counts 1 and 3 are illustrative and read as follows:

"Count 1. In combination with a navigable vehicle, an energy collecting means having a normal angular relation to a source of radiant energy and to the longitudinal axis of the vehicle, means for automatically keeping the vehicle in a set heading, radio receiving means for adjusting said heading to maintain said collecting means in normal relation to said source of energy, and pneumatic means subject to changes in heading to cause relative displacement of the collecting means from its normal relation to the axis of said vehicle in order that said collecting means may retain its normal relation to said source."

"Count 3. In a gyro pilot with homing radio control, a directional antenna, a course maintaining gyroscope, a servo motor for altering the course steered by said gyroscope, a radio compass indicator responsive to the electrical output of said antenna and showing left and right deviations from course, and a differential air flow pick-off device for said indicator for causing said servo motor to operate in the proper direction to keep the craft headed toward a selected radio transmitting station."

The interference is between an application of appellee, No. 32,193, filed July 19, 1935, and two applications of appellants, one No. 214,560 filed June 18, 1938, substituted for application No. 127,736, filed February 25, 1937, and the other No. 95,-042, filed August 8, 1936.

Various proceedings with respect to the parties and applications were had in the Patent Office prior to the final declaration of the interference, which proceedings it is not necessary for us to consider.

The counts, for purposes of decision, will be considered in two groups, viz., (1) counts 1, 2, 4, and 5, and (2) counts 3 and 6.

Appellants in their brief have concisely described the involved invention and the difference between the two groups of counts as follows:

"In the forms illustrated, the invention comprises an automatic pilot of the pneumatic type which pilot includes a course-maintaining gyroscope and a servo-motor for altering the course steered by the gyroscope. A radio compass having an indicator responsive to the electrical output of a directional antenna is operatively connected through a differential airflow pick-off device to the servo-motor whereby the servo-motor is rendered effective to keep the vehicle on which the mechanism is mounted headed toward a selected radio transmitting station (Counts 3 and 6). If there is a cross wind, the vehicle will not follow a straight line path or course to its destination when this mechanism is employed. Accordingly, another embodiment of the invention, as defined in counts 1, 2, 4 and 5, comprises means for rotating the directional antenna to maintain it in a predetermined angular relation to the radio transmitting station and the longitudinal axis of the vehicle irrespective of the alteration of the heading of the vehicle. When the directional antenna or energy collecting means is thus controlled the vehicle or airplane will move along a substantially straight line course to the selected radio transmitting station irrespective of the side wind or 'drift'."

Appellants made no motion to dissolve the interference under the provisions of rule 122 of the rules of the United States Patent Office, 35 U.S.C.A. Appendix.

Both parties took testimony.

Appellant Crane is a captain in the United States Army and appellant Stout, at

all of the times hereinafter mentioned, was an associate engineer who, with Crane, was engaged in Government service at Wright Field, Dayton, Ohio. Appellee is an engineer who, in 1935, was employed by the Sperry Gyroscope Company.

Appellants in their preliminary statement alleged conception of the invention embraced in counts 1 and 2 on or about February 28, 1935, and actual reduction to practice on or about August 28, 1935.

With respect to counts 3 to 6, inclusive, appellants alleged conception of the invention embraced therein on February 4, 1935, and reduction to practice on or about August 1, 1935.

The Examiner of Interferences held that, as to counts 1, 2, 4, and 5, being the first group of counts hereinbefore referred to, appellants had not established conception of the invention embraced therein prior to appellee's filing date of July 19, 1935, and hence awarded priority of invention to appellee of the subject matter of the counts.

With respect to counts 3 and 6, the Examiner of Interferences held that appellants had established conception of the subject matter of said counts at least as early as May 15, 1935. He further held that the earliest date to which appellee was entitled was May 17, 1935, and therefore that, as to these counts, appellants were the first to conceive the invention. He held further that appellants had failed to establish an actual reduction to practice of the invention, and that they were not diligent during the critical period in reducing it to practice. The examiner therefore also awarded to appellee priority of invention as to counts 3 and 6.

Upon appeal, the Board of Appeals affirmed the decision of the Examiner of Interferences, but apparently misapprehended a part of his decision. The board assumed that the Examiner of Interferences had held that appellee was the first to conceive the subject matter of all of the counts and the first to reduce the invention to practice by the filing of his application. The board overlooked the holding of the Examiner of Interferences that appellants were the first to conceive the invention as embraced in counts 3 and 6, and hence the board did not discuss the question of appellants' diligence or their asserted reduction to practice.

■ However, under the rule declared in Re Wagenhorst, 64 F.2d 780, 20 C.C.P.A., Patents, 991, we must hold that the

affirmance by the board of the decision of the Examiner of Interferences constitutes an affirmance of all the grounds upon which the examiner placed his decision.

From the decision of the board appellants have taken this appeal.

■ Appellants' reasons of appeal assign error in the holding that, because appellants did not file a motion to dissolve the interference under rule 122, supra, the testimony of appellee's witnesses regarding the the inoperativeness of the structure disclosed by appellee could not be considered as affecting appellee's constructive reduction to practice of the invention.

That this was not error is clear. Hogue v. Cowling et al., 101 F.2d 541, 26 C.C.P.A., Patents, 874; Schweyer v. Thomas, 68 F.2d 953, 21 C.C.P.A., Patents, 859; Garand v. Pedersen, 76 F.2d 407, 22 C.C.P.A., Patents, 1161; Fishburn et al. v. Vincent, 88 F.2d 711, 24 C.C.P.A., Patents, 1079; Creed et al. v. Potts, 96 F.2d 317, 25 C.C.P.A., Patents, 1084.

The only case cited by appellants to the point that in an application the disclosure of a device which is inoperative cannot be held to be a constructive reduction to practice is that of Skinner v. Swartwout, 1922 C.D. 26; but an examination of that decision discloses that a motion was duly made by Skinner to dissolve the interference on the ground of inoperativeness of the structure disclosed by Swartwout.

Coming now to a consideration of the two groups of counts, we will first discuss the second group, counts 3 and 6, for as to these counts it was held that appellants were the first to conceive the invention embraced therein but were not diligent in reducing it to practice.

As hereinbefore observed, appellants were awarded the date of May 15, 1935, for conception of the subject matter of these counts, and appellee was awarded the date of May 17, 1935.

Appellants urge in their brief that they are entitled to a date at least as early as March 1, 1935, for conception, and appellee argues that, under the testimony in the case, he is entitled to the date of April 26, 1935, for conception.

In view of our conclusion with respect to these counts, it is unnecessary to discuss the claims of the respective parties to earlier dates of conception than those awarded by the Examiner of Interferences

and affirmed by the Board of Appeals. Appellants would be in no better situation were they to be awarded March 1, 1935, for conception of the invention embraced in these counts, for, accepting the date of May 17, 1935, as appellee's date of conception, appellants were chargeable with diligence in reducing the invention to practice only from immediately prior to said May 17, 1935, until they reduced it to practice.

Appellants assert that the record establishes that they successfully reduced the invention to practice on August 28, 1935, and again in November, 1935; there is also some testimony with respect to reduction to practice in June, 1935. Appellants further contend that the record establishes that they were diligent from the time of their conception.

The testimony with respect to reduction to practice in June, 1935, may be dismissed with the statement that it does not establish such reduction to practice, and each of the appellants testified that the first successful test of the invention was on August 28, 1935.

Said testimony of appellants, if corroborated, would establish reduction to practice on said August 28, 1935, but nowhere in the record can we find any independent corroboration of such testimony. It is true that each of the appellants made entries in his notebook to the effect that the test of August 28, 1935, was satisfactory, and that the apparatus worked perfectly, and there was introduced in evidence a document entitled "Record of Military Invention" which was submitted to the Patent Liaison Office at Wright Field; it was signed by appellants and witnessed by one Captain Eppright. This document bears the date of September 16, 1935. It describes the invention embraced in counts 3 and 6, and states that the first flight and operation of the invention was on August 28, 1935, and that the results were satisfactory.

This document and the entries in the notebooks cannot be considered as corroboration of the testimony of appellants that the invention was reduced to practice on August 28, 1935.

In the case of Collins v. Olsen, 102 F.2d 828, 831, 26 C.C.P.A., Patents, 1017, we had the question before us whether reports made by the inventor could be considered as corroborative of the inventor's testimony. In our opinion we said:

"We must conclude that statements in reports by Olsen, no matter how clear, as to what he used, what he did and what the results were, cannot be accepted as proof of reduction to practice, unless fully corroborated, even though such reports were made to an official who had such confidence in their accuracy that he was willing to act upon them without complete and independent investigation. While they constitute good evidence of conception, they are self-serving on the question of reduction to practice. See Petrie v. De Schweinitz, 19 App.D.C. 386; Sundberg et al. v. Schmitt, 58 App.D.C. 292, 29 F.2d 880; Fausek et al. v. Vincent, 92 F.2d 909, 25 C.C.P.A., Patents, 770; Janette v. Folds et al., 38 F.2d 361, 17 C.C.P.A., Patents, 879; Rolfe v. Hoffman, 1905 C.D. 356; Daggett v. Kaufmann, 33 App.D.C. 450; and Robinson v. Thresher, 28 App.D.C. 22."

In the case of Kear v. Roder, 115 F.2d 810, 817, 28 C.C.P.A., Patents, 774, in discussing the necessity of corroboration of the testimony of an inventor to establish actual reduction to practice of an invention, we said:

" * * * In the case of George v. Karsel, 111 F.2d 148, 152, 27 C.C.P.A., Patents, 1063, we said:

" 'This is one of those cases where the testimony of the inventor himself is persuasive; but the rule requiring corroboration of the testimony of an inventor in cases like that at bar is firmly established in patent law and upon the whole is a very salutary rule.'

"A like observation is applicable to the case at bar. All of the witnesses appear to be men of high character, and the testimony of appellant, together with his notebook and time cards, is very persuasive; but unless there be independent corroboration of his testimony respecting actual reduction to practice, no award of priority based upon such actual reduction may be made."

In the case of Akers v. Papst, 113 F.2d 136, 140, 27 C.C.P.A., Patents, 1400, in discussing the question of actual reduction to practice of an invention, we said:

"It is no reflection upon appellant's testimony to hold that corroboration is required. Such corroboration in interference proceedings is a positive rule of patent law. George v. Karsel, Patent Appeal No. 4355, 111 F.2d 148, 27 C.C.P.A., Patents, 1063; Janette v. Folds et al., 38 F.2d 361, 17 C.C.P.A., Patents, 879; Fausek et al. v.

Vincent, 92 F.2d 909, 25 C.C.P.A., Patents, 770."

All of the observations above quoted are applicable here, and regardless of the high character of appellants and the persuasiveness of their testimony, we are bound by the well-established rule of patent law that independent corroboration of the testimony of inventors is essential to establish actual reduction to practice of an invention, and that reports, official or otherwise, which are self-serving statements, cannot be considered as corroborative evidence of such reduction to practice.

It is unfortunate that many inventors are not aware of this rule of law. In the case at bar it seems that there was stationed at Wright Field a Patent Liaison Office to which appellants, as hereinbefore stated, transmitted their report respecting the invention; but apparently appellants were not informed of the requirements of the patent law with respect to reduction to practice of their invention, should a question of priority of invention arise.

This rule of patent law respecting corroborative evidence to establish reduction to practice of an invention did not originate with this court, but has long been established.

In the case of Petrie v. De Schweinitz, 19 App.D.C. 386, decided in 1902, the court stated:

" * * * The evidence of self-serving declarations concerning an invention, whilst admissible as disclosures tending to establish the fact of conception, are clearly incompetent to prove the independent fact of reduction of that conception to practice.

"That the unsupported evidence of a party will not be accepted or acted upon as sufficient proof of the conception of an invention, is a well-settled principle, the reasons for which apply with equal force to its reduction to practice. Mergenthaler v. Scudder, 11 App.D.C. 264, 278; Winslow v. Austin, 14 App.D.C. 137, 141; De Wallace v. Scott, 15 App.D.C. 157, 162; Tyler v. St. Amand, 17 App.D.C. 464, 467; Young v. Donnelly, C.D. 1898, p. 20."

It is plain from the foregoing that the Patent Office tribunals did not err in holding that appellants' claimed reduction to practice on August 28, 1935, has not been established.

While appellants in their brief do not claim any other actual reduction to practice of the invention embraced in counts 3 and 6, there is some testimony of appellants indicating that the subject matter of these counts was included in a claimed reduction to practice on November 22, 1935, of the subject matter of counts 1, 2, 4, and 5. While the testimony of one Captain Holloman is relied upon to establish the success of the test flight of November 22, 1935, this witness did not testify that the invention embraced in counts 3 and 6 was included in the test made on that date.

As hereinbefore indicated, the Examiner of Interferences found that no actual reduction to practice of the subject matter of any of the counts was established by appellants. We do not think that the evidence permits of any other conclusion.

Even had the witness Holloman testified that the subject matter of counts 3 and 6 was tested on November 22, 1935, he did not testify that the results of the test showed that the object of the invention was accomplished. The testimony of the witness upon this point is as follows:

"Q. 11. I hand you Crane and Stout Exhibits Nos. 6 and 10, and ask if you can identify them? A. Yes, sir. I can.

"Q. 12. How are you able to identify these exhibits? A. These two exhibits, 6 and 10, I saw during the time that they were being manufactured, and I didn't see them installed, but did see this item [Exhibit 10] immediately after it was installed and operated it in the rear cockpit of a B-12 airplane it was installed in.

"Q. 13. What was it doing in this airplane? A. It was installed in the airplane for flight test.

"Q. 14. Do you know when the flight test took place? A. It was in November, in the fall, in November,— in the fall of 1935, during the month of November. The flight records will show, I believe, the exact date.

"Q. 15. Do you know the results of that test? A. The results were that all parts worked as they were built.

"Q. 16. Did you fly the plane in this test of November, 1935? A. No, I didn't fly it. Captain Crane was flying it. I was in the rear where this equipment was installed."

In explanation of the exhibits referred to in the quoted testimony, it should be said that they refer to exhibits relating to the

invention embraced in counts 1, 2, 4, and 5.

It will be observed from the above-quoted testimony that all that the witness testified to as to the result of the test was that all of the parts worked as they were built. This could have been true, and yet, even though the parts worked perfectly, they might not have accomplished the results which were the object of the invention.

The Examiner of Interferences further held that, assuming that appellants had established reduction to practice of the invention involved in counts 3 and 6 on November 22, 1935, there was lack of diligence upon their part in reducing it to practice.

We are also in agreement with this holding. The only act of appellants in this respect after August 28, 1935, that could possibly constitute diligence was in transmitting, on September 16, 1935, their report to the Patent Liaison Office at Wright field, presumably for the purpose of making application for a patent for the subject matter of counts 3 and 6.

Between September 16, 1935, and November 22, 1935, there is no evidence of activity either in actually reducing the invention to practice or in the preparation of an application for a patent. This unexplained period of time in which, so far as the record shows, nothing was done toward reducing the invention to practice, evidences lack of diligence upon the part of appellants. Brown, Jr., v. Barton, 102 F. 2d 193, 26 C.C.P.A., Patents, 889.

This is true, even though the lack of diligence be upon the part of the Government. Krebs et al. v. Melicharek, 97 F.2d 477, 25 C.C.P.A., Patents 1362.

Moreover, as appellants have not established a reduction to practice before their filing date, they were chargeable with diligence to that time, and there is no evidence whatever of such diligence.

We hold that upon the record before us the Patent Office tribunals rightly held that appellee is entitled to an award of priority of invention of the subject matter of counts 3 and 6.

Coming now to a consideration of the first-mentioned group of counts, Nos. 1, 2, 4, and 5, if the Examiner of Interferences correctly held that appellants had not established a date of conception prior to the filing date of appellee, July 19, 1935,

then the decision of the board as to these counts must be affirmed, for in that case appellee was the first to conceive and the first to reduce to practice.

Appellant Crane in his testimony was very indefinite as to the date of conception of the invention involved in these counts, but expressed the opinion that it was during the first six months of 1935.

Appellant Stout testified that in his opinion appellants conceived the invention involved in counts 1, 2, 4, and 5 in January, 1935.

There are no drawings or other documentary disclosures of the invention bearing a date earlier than appellee's filing date.

Appellants rely chiefly for corroboration of their testimony with respect to conception upon an affidavit given by Captain Eppright, who testified as a witness in behalf of appellants.

This affidavit bears the date of January 19, 1938. It describes the invention involved in this group of counts and states that the invention thus described was disclosed to affiant "On or about February 28, 1935," by appellant Crane.

The witness Eppright was interrogated respecting this affidavit and testified in part as follows:

"Q. 24. Do you wish to change anything on that affidavit this morning, or do you still believe that when you signed it, that it was a correct statement of your recollection at that time? A. I believe it was at that time, but since then, this 'On or about February 28, 1935,' if anything it was some later date than that.

"Q. 25. About how much later? A. I am quite sure it couldn't have been later as a maximum than some time around October of that year. That was when I left the Instrument Unit,—but generally it wasn't that late.

\*　　\*　　\*　　\*　　\*

"Q. 28. At the time you signed this affidavit, did you think you were signing a proper affidavit? A. Proper on or about February 28th."

Upon cross-examination the witness testified as follows:

"XQ. 34. Who dictated it [the affidavit]? A. I don't know. Captain Crane gave it to me. He talked to me before, and asked me if I would,—as I remember, he asked me if I would either prepare one, or sign it, one way or the other, and I told him

I would, and some time later than that, why, he called me and asked me if I would come over to his office, or something like that, anyway, I came over, and he asked me to read and see if I could see if that was the facts, and I read it, and to the best of my knowledge it seemed to be true. I would like to ask, how much leeway is there on a statement, on or about a certain date? It seems to me that can cover some ground. Can anybody give an interpretation of that?

"XQ. 35. I am afraid you will have to do the answering, and I will have to do the asking. Why do you now think that the date alleged in the affidavit as February 28, 1935, should be in October, 1935? A. I didn't say that, did I?

"By Mr. Smith: The witness did not make that statement, and it is requested that the reporter read back what he did say. (Q. 24 and Q. 25 and the answer thereto, read by the reporter, as requested.)

"A. All I know is two limits. It is in there somewhere.

\* \* \* \* \*

"XQ. 37. As I understand it, then, you think this date was between February 28 and October, 1935? A. Yes."

Said affidavit was offered in evidence by appellants, which offer was objected to by appellee on the ground that it was improper as an effort to introduce into evidence indirectly what should be introduced directly.

It does not appear that this objection was renewed at final hearing or that it was ruled upon by the Examiner of Interferences, but in any event no weight can be given to the affidavit in view of the testimony of the affiant Eppright hereinbefore quoted.

It is significant that the appellant Crane did not testify that he ever disclosed the invention involved in counts 1, 2, 4, and 5 to the witness Eppright.

Moreover, even if appellants were held to have conceived the invention prior to appellee's conception, it would avail them nothing, for we should be compelled to hold that there had been no corroboration of their claimed reduction to practice, and there is no evidence whatever of the exercise of diligence in reducing it to practice after November, 1935.

For the reasons stated herein, the decision appealed from is affirmed.

Affirmed.