25 C.C.P.A.(Patents)
CREED et al. v. POTTS, and three other cases.

Patent Appeals Nos. 3955–3958.

Court of Customs and Patent Appeals.
April 25, 1938.

Paul Kolisch and Edward D. Phinney, both of New York City, for appellants.

E. W. Adams and J. W. Schmied, both of New York City (W. F. Simpson, of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

These appeals involve four interference proceedings in the United States Patent Office. Each of the interferences involves a reissue application of appellee, filed April 10, 1931, for the reissue of a patent, No. 1,708,954, issued to appellee on April 16, 1929, upon an application filed September 17, 1925.

In appeal No. 3955 the interference arises between said reissue application and a patent, No. 1,827,460, issued to appellants Creed and Salmon on October 13, 1931, upon an application filed on December 22, 1928. The interference was declared as of June 12, 1934, and embraces five counts, the same corresponding to claims copied by appellee from appellants' said patent.

In appeal No. 3956 the interference is between said reissue application and a patent, No. 1,895,107, issued to appellant Salmon on January 24, 1933, upon an application filed on September 24, 1930. The interference was declared as of September 19, 1934. One count is involved, the same corresponding to a claim in appellant's patent, copied by appellee.

In appeal No. 3957, the interference arises between said reissue application and a patent, No. 1,931,099, issued to appellant Bancroft on October 17, 1933, upon an application filed on February 26, 1932. The interference was declared as of September 19, 1934. Two counts are involved; they correspond to claims of appellant's patent, copied by appellee.

In appeal No. 3958 the interference is between said reissue application and a patent No. 1,924,357, issued to appellant Griffith on August 29, 1933, upon an application filed on April 30, 1932. The interference was declared as of September 19, 1934, and involves four counts, corresponding to claims of appellant's patent, copied by appellee.

After the declarations of the interferences, the appellants Creed and Salmon in appeal No. 3955 filed a preliminary statement. The appellants in the other three cases filed no preliminary statements. Appellee filed preliminary statements in all of the cases.

In appeal No. 3955, the preliminary statement of the appellants alleged conception of the involved invention subsequent to the filing date of the application upon which appellee's said patent was issued, and appellants in that case were, on August 7, 1934, required to show cause why judgment upon the record should not be entered against them. Like orders were subsequently made in the other three cases.

Within the motion period, motions to dissolve were made by the several appellants in each of the interferences. The same general grounds for dissolution were set up in each of said motions, the same being that appellee had no right to make the counts, that the disclosure of appellee is inoperative, and that appellee is estopped from making the counts.

Each of said motions to dissolve was denied by the Primary Examiner.

After said decisions denying the motions were entered, the appellants in each of the four cases filed requests to take testimony with respect to the meaning of the terms used in the counts and in the patents where they originated, and for the purpose of establishing by expert testimony that the structure disclosed in appellee's patent is inoperative. The particular points of alleged inoperativeness were set out in two affidavits by Bancroft, the appellant in appeal No. 3957.

The Examiner of Interferences denied the motions in so far as they related to the meaning of the terms used in the counts, but granted the motions to take testimony with respect to the inoperativeness of appellee's structure, but only in so far as specific features of such alleged inoperativeness were set out in said motions and in the affidavits of said Bancroft.

The motions to take testimony, and the decisions thereon, in appeals Nos. 3956, 3957, and 3958, are not contained in the record, but are referred to in the decisions of the Patent Office tribunals.

Subsequent to the granting of such motions, testimony was taken applicable to the four interferences in behalf of all the

appellants, and testimony was also taken in behalf of appellee.

It appears from the record that, after such testimony was taken, appellee moved in each of the interferences to strike out certain portions thereof upon the ground that they related to matters outside the scope of the issues fixed by the Examiner of Interferences in his decision granting the motions to take testimony.

All of the appellants are represented before us by the same counsel. The testimony taken applies to all of the appeals. By stipulation, the records in the four appeals were consolidated and, inasmuch as the issues before us are for the most part common to all of the appeals, we shall dispose of the four cases in a single opinion. For the sake of brevity, and to avoid repetition, we have stated the foregoing facts with reference to all of the appeals; from this point, however, we shall proceed to consider the appeals separately.

Appeal No. 3955—Interference No. 68,621.

In this appeal count 1 is illustrative and reads as follows: "1. Telegraph reproducing apparatus comprising signal reproducing means adapted to remain in the position into which it was last moved, independent means positioned in accordance with received signals, and means subsequently acting once in each signal period to cause the said independent means to act on the signal reproducing means."

The subject matter of the interference is stated by the Examiner of Interferences as follows: "The subject matter of the interference relates to telegraphic reproducing apparatus wherein mechanical means acted upon by the signal responsive means actuates the signal reproducing means. The mechanical means comprises a series of elements which are positioned in accordance with the pulses of a five unit code and during each signal period these elements act on a reproducer in accordance with their position."

Upon final hearing, the Examiner of Interferences granted appellee's motion to strike out testimony in so far as the same related to features of alleged inoperativeness not set forth in the motion papers or supporting affidavits upon which leave to take testimony was granted.

The Examiner of Interferences then proceeded to analyze the testimony with respect to the features of alleged inoperativeness which, he held, were within the

issues upon which the taking of testimony was allowed. While he found that, as disclosed, certain features of appellee's structure were inoperative, he invoked the well-established rule that an invention disclosed will not be held to be inoperative if it may be rendered operative by a skilled mechanic, without the exercise of invention. Applying this rule, he held that appellants had failed to establish by a preponderance of evidence the inoperativeness of the device disclosed by appellee.

In appellants' motion to dissolve, in addition to the allegation of inoperativeness, it was contended that appellee had no right to make the counts and that appellee was estopped from making the counts by reason of laches, and by reason of the alleged fact that the invention defined in appellee's reissue application is for a different invention than that claimed in appellee's original patent. The Primary Examiner held that the counts read upon appellee's application and patent, and therefore denied appellants' motion upon this ground. With respect to the ground of estoppel set up in appellants' motion, the Primary Examiner held that the invention claimed in the reissue application of appellee was the same invention disclosed in his patent, and that there was no laches in appellee's making the claims corresponding to the counts involved in this appeal.

The Examiner of Interferences refused, under rule 130 of the United States Patent Office, to consider questions raised in the motion to dissolve other than the question of inoperativeness of the device disclosed by appellee. Having held that said device, as disclosed in appellee's patent, was operative, he therefore awarded priority of invention to appellee.

Appellants appealed to the Board of Appeals. From the decision of the Board we gather that appellants in this appeal did not contend before the Board that appellee could not make the claims corresponding to the counts, but urged only the inoperativeness of appellee's device disclosed by him, and that appellee's reissue application is for a different invention than the one defined in appellee's patent. With respect to the last above stated contention of appellants, the Board refused to consider it, holding that this question was an ex parte matter and not ancillary to the question of priority.

The Board affirmed the ruling of the Examiner of Interferences striking out cer-

tain testimony and declining to consider certain other testimony with respect to inoperativeness of appellee's device in particulars not set forth in appellants' motion to take testimony and the affidavits in support thereof.

The Board further held that appellee's device had not been shown to be inoperative, and affirmed the decision of the Examiner of Interferences awarding priority of invention to appellee with respect to all of the counts involved in this appeal. From such decision appellants took this appeal.

Appellants contend that much of the testimony stricken out was given without objection; that some of it was elicited by counsel for appellee; and that therefore the Patent Office tribunals erred in refusing to consider such testimony with respect to grounds of inoperativeness not specifically set forth in the motion papers upon which leave to take testimony was given.

We find no error in the exclusion of such testimony or refusal by the Patent Office tribunals to consider grounds of inoperativeness of appellee's device not embraced in the motion papers upon which leave to take the testimony was granted. Hopkins v. Peters, 44 App.D.C. 196.

The device here involved is extremely complicated, and the technical questions involved relative to inoperativeness are many. It would be impossible in this opinion to state in detail the particulars in which inoperativeness is claimed, without the use of complicated drawings, and we shall not undertake to do so. The record comprises a volume of 726 pages; we have read it with care, together with the extensive briefs of the parties upon the questions involved.

The rule is here particularly applicable, upon the question of operativeness of appellee's device, that concurring decisions of the Patent Office tribunals will not be disturbed by us unless they are manifestly wrong.

That appellee's device, as disclosed, is inoperative in some respects, is conceded by appellee, and was so found by the Patent Office tribunals; but it is the contention of appellee, and the holding of the Board of Appeals, that such changes as would be necessary to make the device operative would be obvious to one skilled in the art. We are not convinced that the Board of Appeals erred in so holding.

Much of the controversy revolves around the question of whether a certain second stop pin upon a cam of appellee's device, which second stop pin is not shown in appellee's patent drawings or specifically referred to in his specification, was so obviously necessary to make the device operative that one skilled in the art would, in the exercise of mechanical skill, supply it. The cam in question, numbered 524 in appellee's patent drawings, as there shown, carries only one stop pin. It is conceded that a second stop pin, diametrically positioned on said cam, opposite said first stop pin, is required to make appellee's device operative. The Board of Appeals, with reference to this matter, stated:

"The first point of inoperativeness to be considered is the omission of a second stop pin 533 from Fig. 12 of the Potts' disclosure.

"During the motion period, appellants moved to dissolve on the ground that Potts' disclosure was inoperative and urged the same point. The Primary Examiner, on pages 27 to 30 of his decision (paper No. 18), thoroughly analyzed the disclosure of Potts and came to the conclusion that it clearly indicates that a second stop pin was intended to be employed and that it would be added by any one skilled in the art without requiring invention in the making of the Potts structure. The various reasons are given so fully in the Primary Examiner's decision that it is not deemed necessary to repeat them here but we refer to that decision for our reasons. We fully concur with the position taken in that decision. The Examiner of Interferences has also set forth in the paragraph beginning with line 25, page 7 of his decision the principal teaching in the patent that would indicate to any one skilled in the art and reading the patent that a second stop pin is to be used. As pointed out in this paragraph there would be no joint control by the start-stop distributor and the multiplex distributor through levers 528, 534, 535 of the second five unit code signal stored as required by the application, page 24, lines 35-44, if the second stop pin is not present. It is also to be noted that in Potts, Fig. 12, the cam 524 is provided with a raised portion. This raised portion apparently would have no function if there is not a second stop pin present. Bancroft, the expert who testified for appellants, was unable to find any function for the raised portion on this cam if there was no second pin present (C. & S. record, p. 70, Q. 171).

"It may be noted further that there are two sets of lugs on the cams 536 and 537. One set would apparently have no function if there were no second stop pin present. Bancroft failed to discover any function for the second set if no second pin was present (C. & S. record, pp. 70, 71, 72)."

It appears that during the prosecution of appellee's reissue application appellee made certain amendments thereof, among them one disclosing a second stop pin upon the disk or cam 524, above referred to, which amendment, appellants contend, constitutes new matter, and appellants contend further that this second stop pin was not omitted by inadvertence from appellee's original application upon which his patent was issued, but that such omission was deliberate and intentional. Much testimony was taken upon this point.

Appellee attached a drawing to an affidavit which was filed in support of certain amendments, including the addition of a second stop pin. The affidavit states that said drawing was furnished to the general patent attorney of the Western Electric Company (assignee of appellee) on or about March 29, 1922.

Said drawing was offered in evidence by appellants, marked Exhibit 3. This drawing discloses two stop pins on said cam or disk 524, whereas, as hereinbefore stated, appellee's patent drawings disclose only one stop pin on said cam 524. The drawing is marked 3/8/22, which, it is conceded, means March 8, 1922, as the date of the drawing. It is not signed or initialed by any one.

Appellants introduced in evidence Exhibit 4, being a photostatic copy of an original drawing; they also introduced in evidence Exhibit 5, also a photostat, being an enlargement of Exhibit 4. In the lower right-hand corner there are certain notations, one of which reads "Approved L. M. P." In the upper right-hand corner there is the following:

| Issue 1 | 3-8-22 | App |
|---|---|---|
| Spring removed from No. 5 rod | | |
| Lug removed from sending start disc | | |
| Relay added to start circuit | | |
| Issue 2 | 6-1-23 | LMP |

The drawing discloses but one stop pin. It is conceded that, in both instances where they appear on said exhibits, the letters "LMP" are the initials of appellee, placed by him upon the original drawing. It is not denied by appellee that the term "lug," used in the upper right-hand notation, means the same thing as "stop pin."

This drawing corresponds very closely to Figure 12 of appellee's patent drawings, and it is observed that the date of Exhibit 4 is subsequent to the date of Exhibit 3, relied upon by appellee to establish that the second stop pin was omitted from appellee's patent drawings through inadvertence.

From the foregoing, appellants argue that such omission was deliberate and that its omission from the patent drawings cannot be excused on the ground of accident or inadvertence.

It is our view, however, that if the need of the second stop pin would be obvious to one skilled in the art, as was held by the Board of Appeals, the amendment supplying the second stop pin did not constitute new matter, and, so far as operativeness of appellee's device is concerned, it is immaterial whether the second stop pin be specifically disclosed in his application, or would necessarily be supplied in the building of the device by one skilled in the art, without the exercise of invention. In this view of the matter, we regard it as immaterial, so far as this interference proceeding is concerned, whether the omission of the second stop pin in appellee's patent drawings was inadvertent or not.

Moreover, after reciting the above facts with respect to Exhibits 3, 4, and 5, the Board of Appeals in its decision stated:

"To overcome the above evidence, Potts submitted testimony of witnesses. Whitfield, one of the attorneys working for the Western Electric Company in 1923 and who had some part in the preliminary work leading to the preparation of the Potts' application, was called as a witness by Potts. A memorandum dated August 31, 1923 bearing the typewritten name at the bottom H. B. Whitfield was also introduced by Potts as Exhibit 32. Whitfield testified he recalled making the memorandum and the discussions and conversations with Potts at that time. One part of this memorandum reads—

" 'The only change that has been made in this part of the mechanism is the removal of a spring from one of the selecting rods and the addition of a relay.'

"Whitfield testifies that this memorandum was written after a thorough discus-

sion with Potts of the subject matter. He did not list the removal of the stop pin because he regarded that this change would render the device inoperative. He states that if Potts had not concurred in this change he would have listed this change (Potts' record, pp. 161–163).

"Mr. McKenney was called as a witness by Potts. He prepared the original application which resulted in the Potts patent. A print was also submitted as Exhibit 24. This print shows the Potts Figs. 12–17. Notations also appear on the print designating certain changes to be made. One of the notations is '2 stop pins'. The pins are also indicated. McKenney testified that these notations were not placed on the print after the Potts' application was filed. He testified that it was his custom to submit the prints to inventors for their approval after the application was prepared in draft form.

"From the above testimony there is considerable ground for believing that the second stop pin was intended to be present and its omission was due to the draftsman who prepared the drawing for the original application. Coupled with the fact that the entire structure shown and described in the Potts patent indicates that a second stop pin is to be used, the conclusion seems apparent that the second stop pin was inadvertently omitted by the draftsman.

"Supplying the second stop pin in the Potts patent is believed to be obvious to any one reading the disclosure. The witnesses Bacon, Rasmussen, Dubuar and Przysiecke after reading the patent came to the conclusion that the second pin was a part of the device. Rasmussen made a notation on a copy of the patent in 1934 that a second pin should be shown in the drawing. This was at a time before Rasmussen had seen either the junior parties Exhibit 4 or Potts Exhibit 32.

"It is our view that the addition of a second stop pin to Potts reissue drawing was not new matter but that there is sufficient teaching in the original patent application that such pin was used. It was apparently inadvertently omitted and supplying it was obvious to any one skilled in the art."

In view of the record, we are not satisfied that the Board erred in holding that appellee's device should not be held to be inoperative by reason of the failure to specifically disclose in his application, upon which appellee's patent was issued, a second stop pin upon said disk or cam 524.

Various other grounds of inoperability, alleged in appellants' motion and affidavits upon which leave to take testimony was granted, were fully considered by the Patent Office tribunals, and they concurred in finding that, either the device as disclosed was clearly operative, or that, where not clearly operative, one skilled in the art would, upon reading appellee's disclosure, make the device operative without the exercise of the inventive faculty.

After a careful examination of the record and the briefs of the parties, we are not satisfied that the Board of Appeals erred in holding that appellants' contentions of inoperativeness of appellee's device had not been established, either with respect to the second stop pin hereinbefore discussed, or with respect to any of the other grounds of inoperativeness relied upon by appellants.

Appellants further contend that appellee's reissue application is for a different invention than that disclosed in his patent, and for that reason the interference should have been dissolved.

The Board of Appeals held that this is an ex parte matter and does not relate to the issue of priority. Appellants assign error with respect to this ruling.

In so far as appellants' contention embraces a statutory bar to the granting of a patent upon appellee's reissue application, we agree with the Board that this is an ex parte question not ancillary to the issue of priority. Norling v. Hayes, 37 App.D.C. 169.

However, in so far as such contention involves the question of whether appellee's patent and original application discloses the invention here involved, upon which patent appellee is entitled to rely for conception and reduction to practice of the invention, it is a matter directly involving the question of priority of invention. Kollsman v. Carbonara, 88 F.2d 966, 24 C.C.P.A., Patents, 1149.

The Patent Office tribunals have found that the amendments made by appellee during the prosecution of his reissue application did not constitute new matter, with which holding we are in agreement. Inasmuch as it was stipulated in the record that appellee's reissue application, as originally filed, was identical with the specification and drawings of appellee's patent, it

necessarily follows that the invention here involved is the same invention as that disclosed by appellee's patent, unless it should be held that appellee's reissue application does not support the counts involved in this appeal. While appellants did so contend in their motion to dissolve, such question is not argued in appellants' brief, in so far as this appeal is concerned, and, as hereinbefore stated, this point was not specifically referred to by the Board of Appeals in its decision.

■ We find no ground for holding that appellee's reissue application does not support the counts here involved.

Appellants' reasons for appeal set out other grounds for reversal of the decision of the Board of Appeals; we have given them careful consideration and are of the opinion that they present no reasons for reversing the decision of the board.

It is our opinion that the decision of the Board of Appeals should be affirmed.

Appeal No. 3956—Interference No. 69,363.

In this appeal the issue is composed of a single count, which reads as follows: "1. In a telegraph system, a rotating shaft, a plurality of sleeves frictionally mounted on and driven by said shaft, electromagnetic means effective upon the reception of signals for releasing one of said sleeves for rotation, and means actuated after said first sleeve has completed a predetermined portion of a revolution for releasing another sleeve for rotation, and signal reproducing means actuated by said last-mentioned sleeve."

The subject matter involved is stated by the Examiner of Interferences as follows: "The invention in issue relates to a translator for a multiplex telegraph system. The translator comprises a rotary shaft having a plurality of sleeves frictionally mounted on and driven by the shaft. On the reception of signals electromagnetic means releases one of the sleeves for rotation and after this sleeve has completed a predetermined portion of its rotation the other sleeve is released for rotation. The second sleeve actuates a signal reproducing means."

Substantially the same record was made in this appeal as was made in appeal No. 3955, and the same issues are presented for decision, viz., that the device disclosed in appellee's application is inoperative, and that its defects could not be cured by one skilled in the art without the exercise of the inventive faculty; that the Board of Appeals erred in refusing to consider certain testimony and in affirming the decision of the Examiner of Interferences striking out certain testimony; and that appellee's reissue application is for a different invention than the one covered by his patent.

Each of these issues was presented in appeal No. 3955, and the same testimony is relied upon by appellant here as was relied upon by the appellants there.

■ The reasons given by us in appeal No. 3955 for affirming the decision of the Board of Appeals in that case are applicable here, and control our decision upon this appeal. Hence the decision of the Board of Appeals will be affirmed.

Appeal No. 3957—Interference No. 69,364.

In this appeal the issue is composed of two counts, of which count 1 is illustrative and reads as follows: "1. In a regenerative repeater, the combination of a relay for receiving signals, a rotatable device provided with a plurality of slides adjustable to one of two operating positions, means for positioning said slides intermediate said operating positions, switching means associated with said receiving relay and placed immediately subsequent to said slide positioning means with respect to the rotation of said rotatable device to position said slides in one of said operating positions, a set of transmitting contacts, and means associated with said slides to operate said contacts immediately following the positioning of said slides."

The Examiner of Interferences in his decision stated: "The issue relates to a regenerative repeater of the start stop type. Means is provided for receiving signals of two different characters and a rotatable member carrying movable slides is controlled by the signal receiving means which causes a single rotation of the rotatable member. A positioning member movable to one of two positions in accordance with the character of the received signal controls the positions of the slides during the rotation of the rotatable means. A set of contacts is operated by the slides to transmit signals similar in character to those received."

In this appeal the same issues are presented as are involved in appeals Nos. 3955 and 3956, and the same testimonial record is relied upon by appellant here as was relied upon by the appellants in said appeals. However, in this appeal an additional question is argued in appellant's brief, viz., the

question of appellee's right to make the claims corresponding to the counts here involved.

Except as to this question of whether the counts here involved read upon appellee's reissue application, all that has been said in appeals Nos. 3955 and 3956 with respect to the issues there involved is applicable here, and the reasons we there gave for our conclusions are controlling here.

Upon the question of the right of appellee to make claims corresponding to the counts here involved, it is the contention of appellant that appellee's reissue application does not disclose "a regenerative repeater," as set out in count 1, or "a start-stop regenerative repeater," as set out in count 2; and also that appellee does not disclose "means for positioning said slides intermediate said operating positions," as set out in count 1.

With respect to the right of appellee to make claims corresponding to the counts, the Board of Appeals in its decision stated: "The first point to be considered on this appeal is whether the counts are supported by the Potts' disclosure. Bancroft made a motion to dissolve on the ground that Potts cannot make the counts of the issue. The Examiner of Interferences held that he could make them. The examiner applied the counts to the form shown in Figs. 18-21 of the Potts' patent. He regarded these figures as showing a regenerative repeater. The party Bancroft urges that Potts shows no regenerative repeater. The Primary Examiner pointed out in his decision on page 2 (paper No. 13) and Potts has also pointed out in his brief on page 18 that it is proper to designate his structure as a regenerative repeater. We are in accord with this holding for the reasons fully set out by the Primary Examiner and appellant [appellee]. It is pointed out that the term 'regenerate' as applied to telegraph impulses means 'reform'. In Potts' device, the impulses are reformed. The outgoing impulses at the contacts 562 and 563 are independent of the incoming impulses in shape and duration and hence they are reformed or regenerated. The brief of Potts on pages 19, 20 and 21 applies the elements of the counts to the Potts structure as shown in Figs. 18-21. It appears to us that they read directly on the Potts' structure in the same sense that they read on Bancroft. The party Bancroft in his brief does not discuss Figs. 18-21, but refers to Figs.

10-17. We need not consider these figures as long as the counts read on Figs. 18-21. Our view, therefore, is that Potts is clearly entitled to make the counts."

The decision of the Primary Examiner referred to in the above quotation is not found in the record. Appellant's counsel in their brief have not discussed the finding of the Board that the counts read directly upon appellee's structure, as shown in his drawings, Figures 18-21. We are in agreement with the board in its application of the counts.

Appellant's counsel further contend that the translators disclosed by appellee are not used for repeating signals from one start-stop line to another. We find nothing in the counts with respect to the *use* of translators, and we agree with appellee's counsel that said contention of appellant is immaterial to the question here involved.

The decision of the Board of Appeals in this appeal will be affirmed.

Appeal No. 3958—Interference No. 69,365.

This appeal embraces four counts. Count 1 is illustrative and reads as follows: "1. In a translating or selecting mechanism for start-stop apparatus, a continuously rotatable driving means, operating cam means, a clutch therefor, and separate cam means effecting the release of said clutch after a predetermined portion of a revolution."

The issue is stated in the decision of the Examiner of Interferences as follows: "The issue relates to a start-stop signal transmitter. The transmitter comprises signal cam means having clutch driving means. A friction clutch controls the rotation of independent controlling cam means and means is operable during rotation of the controlling cam means for controlling the rotation of the signal cam means."

While, as in the other appeals, appellant's motion to dissolve includes the ground that appellee's disclosure does not support the counts, and the failure of the Board so to hold is included in appellant's reasons for appeal, this question is not discussed in appellant's brief and was not referred to by the Board in its decision. We assume that this question was not urged before the Board. At any rate, we find nothing in the record to warrant a holding that appellee's disclosure does not support the counts.

In all respects the issues presented in this appeal are the same as those presented in appeal No. 3955, and our decision in that appeal controls our decision here. Therefore the decision of the Board of Appeals will be affirmed.

For the reasons herein stated, the decision of the Board of Appeals in each of the appeals before us, numbered 3955, 3956, 3957, and 3958, is affirmed.

Affirmed.