26 C.C.P.A.(Patents)

## REED v. EDWARDS.

### Patent Appeal No. 4081.

Court of Customs and Patent Appeals.

Feb. 6, 1939.

Rehearing Denied March 6, 1939.

E. L. Sheehan, of Washington, D. C., and Jesse R. Stone and Lester B. Clark, both of Houston, Tex., for appellant.

Oberlin, Limbach & Day, of Cleveland, Ohio (Almon S. Nelson, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences awarding priority of invention to appellee with respect to the two counts in issue.

The interference is between a patent, No. 1,936,643, issued to appellant on November 28, 1933, upon an application filed December 10, 1929, and an application filed by appellee on September 16, 1933, the same being a division of an application filed by him on November 16, 1926, upon which a patent, No. 1,927,310, was issued September 19, 1933.

The involved counts read as follows:

"1. A device of the character described including a slotted hollow circular mandrel, cutting members disposed in said slots, co-operating faces on the edges of the slotted portions of said mandrel and said members whereby said members are advanced toward the hollow portion of said mandrel, and a tongue and groove construction between the edges of the slots in said mandrel and said members to limit the rate of travel thereof to a direct proportion of the movement of said mandrel.

"2. An outside pipe cutter including in combination cutters to engage the pipe, a vertically movable mandrel to actuate said cutters, and means on said mandrel to lock said cutters in retracted position when said mandrel is retracted, said means including co-operating beveled faces on said cutters and said mandrel adapted for separation upon operation of the cutter."

The subject matter of the invention is a device adapted for use in cutting and removing pipe lodged in deep oil wells. The device is designed to telescope over the outside of the pipe to be cut; cutters are provided which, when released for engagement with the pipe, sever the same upon rotation of the device. The details of the device are sufficiently described in the counts.

Both of the counts were copied by appellee from appellant's patent for purposes of interference.

Originally only count 1 was involved in the interference.

Both. parties filed preliminary statements. Appellant alleged conception of the invention and disclosure to others in April, 1923, and reduction to practice in July, 1929. Appellee alleged conception of the invention in June, 1921, disclosure to others in March, 1923, and diligence in perfecting it until November 16, 1926, when he constructively reduced it to practice by filing his said parent application.

Thereafter appellant moved to dissolve the interference upon two grounds: 1, that appellee had no right to make the count of the interference, and, 2, that the device disclosed in the application of appellee is inoperative.

Appellee opposed said motion to dissolve, and at the same time proposed to add new counts, being claims copied from appellant's patent. It also appears from the decision of the Primary Examiner upon said motion that appellee also moved to shift the burden of proof to appellant, basing his motion upon the disclosure of the involved invention in his parent application, the filing date of which antedated the filing date of appellant's application. While this motion does not appear in the record, it does appear that the Primary Examiner granted the same, and no claim is made that such decision was erroneous. By virtue of such decision appellant became the junior party.

In said decision of the Primary Examiner upon said motions, appellant's motion to dissolve was denied, and appellee's motion to add counts to the interference was also denied. Appellee appealed from the denial of the motion to add counts to the interference. The Board of Appeals affirmed the decision of the Primary Examiner as to three counts, but reversed him upon one count, which is count 2 before us.

A preliminary statement was filed by appellant with respect to count 2 wherein he alleged conception of the invention set forth in said count, and disclosure to others, in April, 1923, and reduction to practice in July, 1929. The record does not show that any preliminary statement was filed by appellee with respect to count 2.

No testimony was taken by either party, and on July 31, 1936, the Examiner of Interferences issued an order to show cause why judgment upon the record should not be entered against appellant. Thereafter appellant moved for leave to take testimony to show the inoperativeness of appellee's device and that said device will not support the counts of the interference; attached to said motion were several affidavits in support thereof. Appellee opposed this motion and he also filed several affidavits. The Examiner of Interferences denied this motion upon the ground that the showing in support of the motion was insufficient to justify the granting thereof, and upon appeal to the commissioner this decision was affirmed.

Appellee also filed certain other motions, which were denied; in view of the conclusion which we have reached it is unnecessary to make further reference to them.

On February 6, 1937, the Examiner of Interferences entered judgment on the record awarding priority of invention to appellee with respect to both counts. Upon appeal the Board of Appeals affirmed the decision of the Examiner of Interferences, and appellant has appealed to this court.

Before us there are but two questions to be considered; 1, whether appellee's disclosure supports the involved counts and, 2, whether the device disclosed in appellee's application is inoperative.

■ The brief for appellant also contends that he should have been permitted to take testimony relative to the inoperativeness of appellee's ₊structure. As hereinbefore stated, a motion for that purpose was made by appellant and was denied, but such denial is not included in the reasons for appeal filed by appellant, and that question will not be considered by us.

■ There have been three decisions of the Patent Office tribunals sustaining appellee's right to make the claims corresponding to the counts, two by the Primary Examiner (the second being in response to a motion by appellant for reconsideration of the first decision on appellant's motion to dissolve) and one by the Board of Appeals. The question involved is technical and before we would be justified in reversing the board upon this ground it should clearly appear that its decision was erroneous.

■ It is elementary that the counts of an interference must be interpreted as broadly as their terms will reasonably permit, and that, in case of ambiguity in the counts, resort should be had to the patent

or application where the counts originated.

It is appellant's principal contention that appellee's specification discloses only one of the following elements of count 1, viz., "co-operating faces on the edges of the slotted portions of said mandrel and said members," etc., and "a tongue and groove construction between the edges of the slots in said mandrel and said members." Appellant admits that appellee does disclose a tongue and groove construction, but insists that the same element must be relied upon for the cooperating faces on the edges of the slotted portions of the mandrel and the cutting members. As we understand appellant's contention, it is that, even if the tongue and groove construction performs, as one of its functions, the function performed by the cooperating faces above described, nevertheless, inasmuch as the count calls for separate elements in structure, appellee does not disclose such separate elements.

However, both of the Patent Office tribunals have held that appellee discloses both of said elements.

It will be observed from count 1 that there are only two main elements of structure involved, a hollow mandrel and cutting members disposed therein. All of the elements of the count relate to the form and structure of the mandrel and the form and structure of the cutting members, and their method of engagement with each other.

The Primary Examiner in his first decision upon the motion to dissolve stated as follows:

"This last portion of the claim may also be read on the Edwards structure and without resorting to double reading of elements as argued by the party Reed. In the Edwards' application the legs 67 have on their edge portions a series of inclined overlapping ribs or teeth 68 defining slots which mesh with inclined teeth 72 on the cutter 70 and this construction obviously limits travel of the cutters as stated in the count. This engagement between the teeth 68 and 72 fully meets the structure set out in the last portion of the count as follows:

"It is to be noted that because the inclined teeth 68 overlap, a pair of these inclined teeth on each leg portion is always in mesh with the grooves formed by teeth 72 on a corresponding cutter and the engagement of one inclined tooth 68 in one of the grooves formed between the teeth 72 constitutes 'co-operating faces on the edges of the slotted portions of said mandrel and said members whereby said members are advanced toward the hollow portion of the mandrel' while the engagement of the other of said pair of ribs on each leg with another of the slots formed by the series of teeth 72 on each corresponding cutter 70 is 'a tongue and groove construction' as defined by the last portion of the claim."

The Board of Appeals in its decision stated:

"It has long been recognized that one element of a claim may be relied upon for performing different functions. We believe, therefore, that even if it were necessary to construe this count in this manner, it would still read upon the Edwards disclosure. However, we can see no reason why one side of a tongue or a groove in the Edwards device may not be regarded as the means for advancing the cutter, and why the other side may not be regarded as the means for limiting the rate of travel.

"It is true that there is no particular reason why the rate of travel should be controlled in the Edwards tool as cutting does not occur at the time the advance is taking place but, if the count is satisfied by the Edwards device, this fact is immaterial. It is our opinion that this count reads without any forced construction upon the disclosure of the party Edwards."

We are not convinced that the Patent Office tribunals were wrong in their holdings above stated.

It is appellee's contention that the disclosure of appellant's patent is the exact equivalent of the disclosure in appellee's application, and that if appellee does not disclose these separate elements, then neither does appellant. While there is much force in this contention, we do not feel it necessary to pass upon the same.

With respect to count 2 the board stated:

"Count 2 clearly reads upon the Edwards disclosure, except as to the introductory and last clauses. The party Reed contends that a cutter for cutting away a coupling is not an outside pipe cutter. We cannot, however, agree with this limited interpretation.

"Again it is the party Reed's contention that it is necessary to employ the

same element for performing two functions and once again we may call attention to the fact that this is not a sufficient reason for holding that the claim does not read upon the Edwards disclosure. We also believe, inasmuch as the particular portions of the cooperating beveled faces which lock the cutters in retracted position are separated as the cutters are advanced, that it is unnecessary to rely upon the same element for performing dual functions."

■ With the latter portion of the above statement we are in accord, and with reference to the statement that the same element may be relied upon for performing two functions, we express no opinion thereon with respect to the application of that rule as applied to the counts before us. We are of the opinion, however, that while a given structure may in one sense be considered a single element, in another sense it may be so formed as to consist of several elements, depending upon the functions to be performed by such elements.

With relation to count 2 the board further stated: "The party Reed also contends that the separation does not occur upon operation of the cutter. It is true that in the Edwards device the advance does not take place during the cutting operation but the count does not specify that it does and we consider that any movement of the cutter is an operation of it. We are still of the opinion that this count clearly reads in terms upon the disclosure of the party Edwards."

■ We are in accord with the foregoing. We think the word "operation" used in the last portion of the count has the same meaning as the word "actuate" in the first portion, and that any movement of the cutter is an operation of it.

We would observe that in neither of the counts is there anything stated with respect to the actual cutting of the pipe.

Further, appellant contends that the cutters of appellee are not actuated by the vertical movement of the mandrel. His position is that the term "actuate" should be construed as meaning the operation of cutting the pipe, and that appellee's mandrel merely moves his cutters into engagement with the pipe. It is true that appellee's mandrel operates in this manner, but the same is true of appellant's device. The vertical movement of appel-

lant's mandrel does not cause the pipe to be cut, but only places the cutters in position for cutting. For any cutting operation the cutters must be rotated and this is not caused by any vertical movement of the mandrel. So appellant clearly has used the word "actuate" to mean to move the cutters into position for cutting, and this appellee also does.

■ We are not convinced that the Board of Appeals erred in holding that the involved counts are supported by appellee's disclosure.

Upon the question of the inoperativeness of appellee's device we have more difficulty. The board indicated that if appellant had presented proper affidavits in support of his motion to take testimony, such testimony might have developed the inoperativeness of appellee's device, but that in the absence of such testimony the board did not feel justified in holding that appellee's device was inoperative. The board also expressly held that in certain respects appellee's device, as disclosed in his application, was inoperative, but that it required only changes obvious to one skilled in the art to make it operative.

The board then discussed in detail various contentions of appellant as to inoperativeness of appellee's device, which require no extended discussion as we think the board was clearly right as to such contentions.

The last contention of appellant as to inoperativeness of appellee's device is discussed by the board as follows: "The only question remaining is the provision for slight rotary movement between the parts 61 and 62. Clearly, the screw-threaded connection will permit such movement if it is not tightened up. It is our opinion that it would be obvious to leave this connection loose. While the counts do not require that it must be loose after cutting has been attempted, in order to permit the removal of the tool when the cutting has not been completed, we consider that it would be a simple and obvious matter to provide some arrangement so that stoppage of relative rotation would occur before the threads are unduly tightened."

■ The last quoted statement is sharply challenged by appellant. He contends that no driller would for a moment consider using a loosely threaded connection in a deep oil well. However, it will be observed that the board held that it would be

a simple and obvious matter to make provision against relative rotation before the threads were unduly tightened. While we are frank to say that how this could be done is not obvious to us, we are not skilled in the art, nor do we have the technical information relating thereto possessed by the Patent Office tribunals. Therefore, while we are not clear that appellee's device is operative, we cannot say that the Patent Office tribunals in their concurring decisions are manifestly wrong in holding that, upon the record made, appellee's device should be held to be operative.

■ After the original transcript of record had been certified from the Patent Office, appellee suggested a diminution thereof, and this court issued a writ of certiorari requiring that certain additions to the record be certified by the Commissioner of Patents and that the same be printed. Pursuant to said writ, said additions were made to the record. It is our view that the additional record so certified and printed was unnecessary to a proper determination of the issues in this case, and that the cost of printing the same should be taxed against the appellee, and it is so ordered.

The decision of the Board of Appeals is affirmed.

Affirmed.