45 C.C.P.A. (Patents).

**Vance W. TOLLE and Paul E. Ludy, Appellants,**

v.

**William A. STARKEY, Appellee.**

**Patent Appeal No. 6339.**

United States Court of Customs and Patent Appeals.

June 18, 1958.

D. C. Staley, Dayton, D. C. (G. L. De-Mott, Washington, D. C., of counsel), for appellants.

Verne A. Trask, Indianapolis, Ind. (Richard R. Trexler, Chicago, Ill., and Francis C. Browne, Washington, D. C., of counsel), for appellee.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY and RICH, Judges.

JOHNSON, Chief Judge.

This is an appeal from the decision of the Patent Office Board of Patent Interferences awarding priority of invention of the subject matter of interference No. 87,020 to the senior party, William A. Starkey, the appellee here. The invention in issue is a method of coating articles made of rubber or synthetic elastomers and is defined in a single count which is as follows:

"In the method of coating a substantially electrically non-conductive article made from a material selected from the class consisting of rubber and synthetic elastomers, which article includes a metal insert therein, with a solvent containing paint, the steps of; heating the article to a temperature of from 150°F. to 250°F., passing the heated article into an electrostatic field of defined character, and simultaneously spraying a solvent containing paint on the article whereby a uniform, strongly adhering coating is obtained."

The count corresponds to claim 1 of patent No. 2,555,519 granted to appellants, Tolle and Ludy, on June 5, 1951, on an application filed March 11, 1947. Starkey is involved in the interference

on his application No. 290,007, filed May 26, 1952, which is a continuation of application No. 689,116, filed August 8, 1946. The Primary Examiner held that the interfering subject matter was disclosed in the last-mentioned application, and made Starkey the senior party, and the Board of Patent Interferences refused to disturb that ruling.

■ The interference was declared under the practice set forth in the Commissioner's Notice published in 681 O.G. 865, April 27, 1954, because of the fact that Starkey's earlier application disclosed only one material to be coated (rubber) and one temperature (250°F.). Accordingly, Starkey's later application, which is involved in the interference, does not contain a claim exactly corresponding to the count, but a similar claim which recites only rubber as a material to be coated and 250°F. as the temperature to which it is to be heated. That difference, however, is not important here since it is well settled that the party who is the first to invent any species falling within the scope of an interference count is entitled to the award of priority. Den Beste v. Martin, 252 F.2d 302, 45 C.C.P.A., Patents, 798, and cases there cited.

■ In the brief for appellants it is contended that the interference count is not supported by the disclosure of either of appellee's applications above referred to. However, appellants' reasons of appeal do not assign error in the holdings of the Patent Office tribunals that those disclosures support the count and accordingly those holdings cannot be reviewed here. Reed v. Edwards, 101 F.2d 550, 26 C.C.P.A., Patents, 901; Kohl v. Wilms, 175 F.2d 466, 36 C.C.P.A., Patents, 1099. It may be noted, however, that in view of the peculiar practice under which the instant interference was declared it is not necessary, so far as the question of priority of invention is concerned, that appellee's applications should disclose the broad subject matter of claim 1 of the Tolle and Ludy patent. It is sufficient if those applications disclose the subject matter of the more limited claim on which appellee was included in the interference.

■ The issue here involved is one of originality, since it is agreed that the invention was conceived during the course of some experimental work on August 1, 1944, at which only Tolle, Ludy, Starkey and Edwin M. Ransburg, the vice-president of the Ransburg Electro-Coating Corporation, were present. The following facts are not disputed or are clearly established by the evidence of record:

Throughout 1944, Tolle and Ludy were employed by the Inland Division of General Motors Corporation, while Starkey was employed by the Ransburg Electro-Coating Corporation. During the spring of 1944, the Ransburg Company, at the request of General Motors, conducted tests to determine whether it was practicable to coat rubber-covered steering wheels by an electrostatic process corresponding to that covered by the count, except that the wheels were not heated in these tests. On June 21, 1944, Ransburg wrote to General Motors, stating that the results of such tests were not satisfactory but expressing the hope that improvement might be possible and suggesting a conference within a few weeks to discuss the matter further.

On August 1, 1944 Tolle and Ludy visited the Ransburg Company and, together with Starkey and Ransburg, participated in some experiments on electrostatic coating of steering wheels. It is not contended that either party, prior to those experiments, had thought of applying the coating to the wheels while they were at an elevated temperature, which is the essential novel feature of the invention in issue.

During the course of the August 1, 1944 experiments at least one steering wheel was heated and coated. It is agreed that the wheel was placed in an oven for approximately thirty minutes, that the oven temperature was in the vicinity of 250°F. and that the wheel was coated while it was still hot. It is clear, and appears to be agreed by the parties, that the experiment just described establishes a conception of at least one spe-

cies coming within the terms of the count, and the only point in issue is whether the conception was that of Tolle and Ludy or of Starkey. The only direct evidence as to that matter is the testimony of Tolle, Ludy and Ransburg, Starkey having died prior to the taking of testimony. Since the testimony was given more than ten years after the events to which it relates and is based principally on recollection, it is not surprising that the statements of the witnesses are in some respects vague and contradictory.

Ludy testified that he was present, with Tolle and Ransburg, during the experimental work on August 1, 1944. He did not remember that any one else was present. He stated that he suggested that the difficulty in coating might be due to moisture on the wheels and that some wheels were put into an oven and preheated, after which they were satisfactorily coated. He thought the suggestion of placing the wheels in the oven was made by Tolle.

Tolle, like Ludy, did not remember that Starkey was present at the experiments on August 1, 1944. He testified that Ludy mentioned the possibility that moisture on the wheels might cause difficulty in coating and that he (Tolle) "suggested we put it in an oven," after which several wheels were placed in an oven for about half an hour and then coated with fairly satisfactory results "but not what we exactly wanted."

Ransburg's testimony as to the events of August 1, 1944 was substantially more detailed than that of Tolle and Ludy. He agreed that the initial suggestion of drying the wheels in an oven prior to coating was made by "the men from Inland," i. e., Tolle and Ludy, but stated that their suggestion was that the wheels be placed in the oven for only a brief period of about one minute, and that when that was done no improvement in the coating was noted. Thereafter, according to Ransburg, Starkey, who was present at the experiments, proposed that the wheels be left in the oven for about thirty minutes, but Tolle and Ludy objected to such a procedure, whereupon

Starkey, without telling them, heated a wheel in the oven for thirty minutes and coated it successfully. Ransburg and Starkey then disclosed the result of that test to Dr. Emory P. Miller, the director of research and development of the Ransburg Company, who made a memorandum of it, and, later in the day, Starkey and Ransburg disclosed it to Tolle and Ludy and, in their presence, satisfactorily sprayed a wheel which had been heated for thirty minutes or longer.

It is evident that a wheel left in an oven having a temperature in the neighborhood of 250°F. for only one minute would not be heated to the degree required by the count, and it is therefore necessary to determine whether the idea of continuing the heating for thirty minutes was suggested by appellants or appellee.

From the foregoing summary of the testimony, it will be seen that neither Tolle nor Ludy testified categorically that the suggestion of heating the wheels for thirty minutes originated with them. Ludy did not say how long the wheels were left in the oven, while Tolle, although he testified to a heating period of thirty minutes, did not state that he suggested a period of such duration.

Notwithstanding the uncertainty of their testimony of this important point, neither Tolle nor Ludy saw fit to testify in rebuttal of Ransburg's definite assertion that Starkey made the suggestion of heating for the longer period. Their failure to offer rebuttal testimony under such circumstances as to matters clearly within their knowledge justifies the inference that Ransburg's testimony is correct so far as it relates to matters allegedly taking place in the presence of Tolle and Ludy. The failure to rebut unequivocal testimony on the issue of originality raises a strong presumption that it is accurate. Winslow v. Austin, 14 App.D.C. 137, 1899 C.D. 301.

Appellants rely on a memorandum prepared by Ludy relative to the experiments of August 1, 1944, and dated August 3, 1944. The existence of that memorandum on or about the date which

it bears is satisfactorily established, and it contains the following pertinent statements:

"* * * I [Ludy] suggested that the moisture present in the compound might cause the surface charge since these wheels were recently through our washer. Mr. Tolle suggested that we place one wheel in a nearby oven at 250°F. for thirty minutes and then test for surface charge. This wheel was completely satisfactory.

"Mr. Ransburg expressed some doubt about the moisture present causing the trouble; however, the pre-heating of the wheel seems to be the answer to the problem. It is believed that a shorter bake and a lower temperature would meet with equal results."

Ludy's memorandum, of course, is not under oath, is essentially self-serving in nature and is clearly hearsay, insofar as it might be relied upon to prove the truth of the facts contained therein. Moreover, it is significant that Tolle's testimony showed that he had no definite idea of what a surface charge is or how it could be measured, and clearly indicated that his only reason for suggesting that the wheels be heated was to dry them. It seems extremely unlikely, therefore, that he would have suggested testing for surface charge as stated in the memorandum.

It is also to be noted that the memorandum suggests that a shorter bake and lower temperature "would meet with equal results." This appears to corroborate Ransburg's testimony that Tolle and Ludy were not in favor of a thirty minute heating period. If they had made the original suggestion of that period there is no apparent reason why it should have been emphasized in the memorandum that a shorter period and lower temperature would probably do as well.

We agree with the Board of Patent Interferences that the Ludy memorandum "merely sets forth the results of a coalescence of ideas developed by both parties at the meeting" and that it affords no

substantial evidence that Tolle suggested the thirty minute heating period.

Appellants contend that Ransburg's testimony as to Starkey's suggestion of heating for thirty minutes is not corroborated and therefore cannot be accepted as sufficient. However, as pointed out in Snead & Co. Iron Works v. Behn, 1925, 55 App.D.C. 275, 4 F.2d 942, the rule which requires corroboration of an inventor's testimony does not apply to the testimony of a single witness testifying after the death of the inventor, as to disclosures made to him by the inventor. Moreover, as above pointed out, Ransburg's testimony is considerably strengthened by the failure of appellants to testify in rebuttal.

We are of the opinion, as was the Board of Patent Interferences, that the record shows that Tolle disclosed no more than the idea of heating the wheels to dry them, and that the idea of heating them to the temperature specified in the count and coating them while hot originated with Starkey and was disclosed by him to Tolle and Ludy. Under these circumstances it is immaterial when or by whom the invention was first reduced to practice, since Tolle and Ludy cannot be regarded as original inventors.

Appellants contend, however, that since the initial suggestion of heating was admittedly made by Tolle, and that suggestion was the "spark" which led to the final satisfactory result, Starkey could not properly be regarded as the first inventor of the subject matter of the count even if he was the first to suggest the thirty minute heating period. That contention would have substantial merit if the initial suggestion left nothing to be done but the experimental determination of the optimum temperature, but that is by no means the case.

Tolle's idea was merely to dry the wheels, and it seems to have been no part of his conception that they should be heated to any particular temperature or that they should be coated while heated, as required by the count. Accordingly, one following his idea would not have been led to heat the wheels to the tem-

perature specified in the count, nor would he have considered it essential to coat them while heated. The temperature would have been considered immaterial, so long as the wheels were dry.

It follows that Tolle's idea lacked the essential feature which gave vitality to the count, namely, that the wheels must be at a particular elevated temperature when they are coated. We agree with the Board of Patent Interferences that the last mentioned feature was suggested by Starkey and that he is, therefore, the original inventor of the subject matter in issue.

It may be noted that the situation here presented is quite similar to that in O'Donnell v. Hartt, 75 F.2d 195, 22 C.C.P.A., Patents, 958. The invention in issue in that case was a method of securing a binding coated with meltable adhesive, which involved blowing a hot gas against the coated surface. It was held that O'Donnell was the first inventor even though Hartt had suggested to him the broad idea of heating the coated surface with hot gas, since the conception of *blowing* a hot gas against the surface originated with O'Donnell. The court found that O'Donnell must have received from Hartt at least "a stimulation for further experimentation in the application of hot air or hot gas to the adhesive material," but did not consider that stimulation and the disclosure of the basic concept of heating with gas to be enough to constitute Hartt the original inventor of a claim calling for a particular method of heating with gas.

Similarly, in the instant case, we are of the opinion that, while Tolle's proposal of drying the wheels in an oven prior to coating may have stimulated Starkey's conception of heating them to the temperature set forth in the count and coating them while hot, Tolle's proposal did not involve or suggest the latter idea, and did not constitute Tolle or Ludy an inventor of the invention in issue.

The decision of the Board of Patent Interferences is accordingly affirmed.

Affirmed.